No. 03-808

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 397

JAMES R. AND ELIZABETH ANN WOMBOLD,

Plaintiffs, Respondents, and Cross-Appellants,

v.

ASSOCIATES FINANCIAL SERVICES COMPANY
OF MONTANA, INC., WILLIAM NOLAN,

Defendants, Appellants and Cross-Respondents.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDV 2000-888,
The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Neil Ugrin (argued), Mark Higgins and Cathy Lewis, Ugrin, Alexander,
Zadick and Higgins, Great Falls, Montana

Jan Chilton, John Sullivan, Severson & Werson, San Francisco, California

For Respondents:

Thomas E. Boland (argued), Attorney at Law, Great Falls, Montana
Jeremiah C. Lynch (argued), Attorney at Law, Great Falls, Montana

For Amicus Curiae AARP:

Mary Helen McNeal, Attorney at Law, Missoula, Montana

For Amicus Curiae Montana Consumer Finance Association:

Jerome T. Loendorf, Attorney at Law, Helena, Montana

For Amicus Curiae Attorney General:

Hon. Mike McGrath, Attorney General; Candace F. West, Assistant Attorney General, Helena, Montana

For Amicus Curiae American Financial Services:

Joseph Mazurek and Michael Green, Crowley Haughey Hanson Toole & Dietrich, Helena, Montana

Mary Scrim Dyre, Crowley Haughey Hanson Toole & Dietrich, Billings, Montana

Orally Argued:  July 28, 2004
Submitted:  August 31, 2004
Decided:  December 30, 2004

Filed:

_____
Clerk

2

Justice John Warner delivered the Opinion of the Court.

¶1     Respondents James R. and Elizabeth Ann Wombold ("Wombolds") initiated this action against Appellant Associates Financial Services Company of Montana, Inc., ("Associates") alleging Associates, a licensed lender under the Montana Consumer Loan Act ("CLA"), utilized illegal lending practices in violation of the CLA in its real estate- secured loans to Wombolds. This suit has now been certified as a class action. A subclass was also certified; this appeal concerns Wombolds and other plaintiffs who are a part of the subclass.

¶2     The District Court granted Wombolds' motion for partial summary judgment to the effect that there is a private right of action under the CLA and points charged by Associates violated the act. Associates now appeal. Wombolds cross-appeal from the District Court's denial of that part of their motion whereby they sought to have the loans in question declared void.

¶3     We restate the issues on appeal as follows:

¶4     1. Does the CLA confer a private right of action on borrowers?

¶5     2. Does the CLA prohibit licensees from charging a "prepaid finance charge/loan fee/discount points" on the origination of real estate-secured loans?

¶6     3. In the alternative, does the CLA require a licensee to refund a portion of the "prepaid finance charge/loan fee/discount points" when a real estate-secured loan is paid in full before its maturity date?

¶7     4. Did the District Court err in not declaring the loans void under the CLA after it found that Associates had violated the act?

¶8     We affirm.

3

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶9    The parties agreed to a Statement of Uncontroverted Facts essentially as follows. From January 1, 1995, through November 8, 1999, Associates operated within the State of Montana through Associates Financial Services Company of Montana, Inc., a Montana corporation, that operated a consumer loan business subject to the requirements of the Montana Consumer Loan Act (Title 32, Chap. 5, MCA).  From November 8, 1999, through December 31, 2000, the successor in merger to the Montana entity, Associates Financial Services Company, Inc., operated a consumer loan business within the State of Montana subject to the requirements of the Montana Consumer Loan Act.

¶10    From January 1, 1995, through December 31, 2000, Associates made 3,833 real estate-secured loans in Montana.  Of these loans, 1,111 were second mortgage loans.  The remaining 2,722 real estate-secured loans were first mortgage loans.

¶11    Associates at times imposed a charge on the Montana real estate-secured loans from January 1, 1995, through December 31, 2000, which could be characterized as prepaid finance charges, loan fees, or points.  Hereafter these prepaid finance charges/loan fees/points will simply be called "points."

¶12    The points were calculated as a percentage of the amount financed by the underlying promissory note and varied from zero percent (0%) to ten percent (10%) of the amount financed.

¶13    Associates charged points on 2,818 real estate-secured loans it made between January 1, 1995, and December 31, 2000.

¶14    Except in rare instances, the points were not directly related to expenses incurred by

4

Associates in relation to services provided to Associates by a third-party, including but not limited to recording fees, reconveyance fees, and other similar fees. Even in those instances, where a third-party expense was incurred by Associates, the majority of the funds received as points constituted gross income to Associates.

¶15 The points were added to and made a part of the principal balance of the loan. As they were added to the principal balance of the loan, interest was charged on the points at the agreed rate of interest of the loan.

¶16 With respect to every real estate-secured loan Associates made in Montana from January 1, 1995, through December 31, 2000, and on which points were collected, Associates did not refund any portion of these points when the loan was prepaid by a cash payment derived from a source other than an Associates refinance of the previous loan.

¶17 With respect to every real estate-secured loan Associates made in Montana from January 1, 1995, through December 31, 2000, and on which points were charged and collected, Associates did not refund any portion of those points when the loan was prepaid, or when Associates accelerated the amount due after the debtor had defaulted on the underlying obligation.

¶18 With respect to every real estate-secured loan Associates made in Montana from January 1, 1995, through December 31, 2000, on which points were charged, Associates did not refund any portion of those points when the loan was prepaid from the proceeds of a new loan made more than one year from the original loan.

¶19 With respect to those loans made from January 1, 1995, through December 31, 2000, which were refinanced by Associates within one year, a portion of the points was refunded,

with the refund calculated based on a ratio of the number of unexpired months in the one year period over 12.

¶20     All second mortgage loans Associates made in Montana from January 1, 1995, through December 31, 2000, are governed by the Montana Consumer Loan Act.

¶21     Additional facts are stated as necessary.

¶22     In 1997 the Legislature amended the CLA to exclude first mortgage loans from the CLA's regulation. This litigation concerns first mortgage loans made by Associates from January 1, 1995, to October 1, 1997, and second mortgage loans made from January 1, 1995, through December 31, 2000.

¶23     In June 2001 Wombolds initiated this action against Associates alleging Associates engaged in illegal lending practices. Associates answered denying Wombolds' claim.

¶24     In December 2001 Wombolds moved to amend their complaint to seek certification as a Class Action. The District Court granted the motion and also certified a specific subclass consisting of those persons whose consumer loans were secured by a mortgage on real property. This appeal concerns members in this subclass. The subclass members claim that points charged by Associates on real estate-secured loans violate the CLA. These points, typically one percent of the amount borrowed for each point, in some cases ran as high as eight to ten percent of the note amount. The points were added to the principal amount of the loan at the outset, and interest was charged upon the new principal amount which included the points.

¶25     The CLA contemplates two types of loans: first, add-on interest loans where the total interest to be charged on a loan is added to the amount borrowed and the resulting sum is

divided by the number of months over which payment is to be made, resulting in the required monthly payment; and second, interest-bearing loans where interest at the agreed rate is charged on the principal balance remaining after each payment is applied first to interest and the remainder to principal.

¶26    The loans in question were set up as interest-bearing loans, not add-on interest loans. Thus, the interest rate and the amount of the loan was agreed on, as well as the points to be charged. The amount of the loan was advanced to the borrower, and Associates kept the points. The points were added to the amount owed, and thus the principal balance of the loan, upon which interest was charged, became the sum of both the points and the amount advanced, and the borrower paid simple interest on this amount. If the loan was paid early, or defaulted, there was no refund of the points that had been added up front.

¶27    Both parties moved for partial summary judgment. The District Court granted Wombolds' motion. Initially, the District Court entered judgment largely adopted from Wombolds' *ex parte* submission of a proposed order. Associates moved for reconsideration pursuant to Rule 60(b), M.R.Civ.P., arguing that the District Court's Order exceeded the parameters of the parties' Stipulation. The District Court agreed and vacated its initial Order, and issued its Revised Findings of Fact, Conclusions of Law and Order. In its revised order the District Court again granted partial summary judgment to Wombolds. However, in its second order it declined to declare the loans void, which is a possible remedy under the CLA. The partial summary judgment was certified as final and ripe for appeal under Rule 54(b), M.R.Civ.P.

¶28    Associates has appealed the District Court's judgment that it violated the CLA.

7

Wombolds cross-appeal the denial of a judgment that the loans in question are void as a result of the violation of the CLA.

## STANDARD OF REVIEW

¶29 We review a district court's decision to grant or deny a Motion for Summary Judgment *de novo*. *Associated Press v. Crofts,* 2004 MT 120, ¶ 11, 321 Mont. 193, ¶ 11, 89 P.3d 971, ¶ 11. To prevail, the moving party must demonstrate that no genuine issues of material fact exist. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. If the moving party is successful, the burden shifts to the nonmoving party to establish that genuine issues of material fact exist. *Bruner*, 272 Mont. at 264, 900 P.2d at 903. Unsupported, conclusory or speculative statements on the part of the non-moving party, as to what might have happened, do not constitute issues of fact precluding summary judgment. *Nelson v. Montana Power Co.* (1993), 256 Mont. 409, 412, 847 P.2d 284, 286. If no genuine issues of fact exist the court must then determine whether the moving party is entitled to judgment as a matter of law. *Bruner,* 272 Mont. at 264-65, 900 P.2d at 903.

¶30 Associates urge that we hold, as a matter of law, that the District Court erred in its following conclusions: (1) the CLA confers a private right of action, (2) Associates violated the CLA by charging points on the real estate-secured loans in question; or alternatively, (3) Associates violated the CLA by not crediting or refunding a portion of the points charged when a real estate-secured loan was paid in full prior to the maturity date of the loan. We review a district court's conclusions of law *de novo*. *E.g., Rossi v. Pawiroredjo,* 2004 MT 39, ¶ 13, 320 Mont. 63, ¶ 13, 85 P.3d 776, ¶ 13. In part, these issues require this Court to interpret the CLA. Issues of statutory interpretation are reviewed *de novo. Redies v. Cosner,*

8

2002 MT 86, ¶ 24, 309 Mont. 315, ¶ 24, 48 P.3d 697, ¶ 24.

¶31 Following a Motion for Relief from Judgment under Rule 60, M.R.Civ.P., a slight abuse of discretion need be shown to warrant reversal of a trial court's refusal to set aside a judgment. *Karlen v. Evans* (1996), 276 Mont. 181, 185, 915 P.2d 232, 235. If the trial court has set aside the judgment and the appellant requests the judgment be reinstated, then a manifest abuse of discretion must be shown to warrant reversal. *Karlen*, 276 Mont. at 185, 915 P.2d at 235.

## DISCUSSION

## ISSUE 1

¶32 Does the CLA confer a private right of action on borrowers?

¶33 Associates argues that the CLA provision providing: "[a]ll powers and duties of regulation and supervision conferred by this chapter are vested in the department," constitutes a prohibition of a private right of action, because, it argues, the Department of Administration, which issues licenses and oversees compliance of the act, is the sole entity authorized to seek a remedy for violations of the act in the Courts. Section 32-5-401(1), MCA. Conversely, Respondents argue that the remedy provisions of the act indicate that legislative intent is consistent with allowing a private right of action because, necessarily, the remedy of voiding a loan benefits the borrower.

¶34 The CLA does not expressly authorize a private right of action by a person injured as a result of a violation. Likewise, the legislative history is void of language indicating an intent to expressly grant or deny a private right of action. The federal courts have held:

[T]he legislative history of a statute that does not expressly create or deny a

9

private remedy will typically be equally silent or ambiguous on the question. Therefore, in situations such as the present one "in which it is clear that [ ] law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling."

*Cannon v. Univ. of Chicago* (1979), 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560.

¶35 The question of whether a statute creates a private cause of action by implication is a matter of statutory construction.

The development of the case law of Montana with respect to the rules of statutory construction may be summarized by the following analysis: (1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain language of the statute? (3) Is the interpretation reasonable so as to avoid absurd results? and (4) Has the agency charged with the administration of the statute placed a construction on the Statute?

*Montana Power Co. v. Cremer* (1979), 182 Mont. 277, 280-81, 596 P.2d 483, 484.

¶36 In statutory construction, we also consider the nature of the legislation; here, regulation of consumer lenders and the protection of borrowers. Generally, "[l]egislation enacted for such a beneficent purpose is to be liberally construed." *State ex rel. Dreher v. Fuller* (1993)*, 257 Mont. 445, 448, 849 P.2d 1045, 1047; *see also* § 1-2-103, MCA, (providing statutory "provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice").

¶37 The CLA serves to regulate the consumer loan industry and protect borrowers from predatory lending practices. This legislation grants borrowers certain rights regarding the structure of their loans.

[W]e can assume that the legislature is aware of the doctrine of implied

statutory causes of action and also assume that the legislature would not enact a remedial statute granting rights to an identifiable class without enabling members of that class to enforce those rights. Without an implicit creation of a remedy, the statute is meaningless.

*Bennett v. Hardy* (Wash. 1990), 784 P.2d 1258, 1261.

¶38 Although we encourage the legislature to be more precise in its language, in considering the CLA we cannot conclude that failing to expressly provide for, or to disallow, a private right of action forecloses such right. When considering remedial legislation, we agree with the approach of the United States Supreme Court:

When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights. But the Court has long recognized that under certain limited circumstances the failure of Congress to do so is not inconsistent with an intent on its part to have such a remedy available to the persons benefitted by its legislation.

*Cannon*, 441 U.S. at 717, 99 S.Ct. at 1968.

¶39 The act's remedial measures, are indicative of legislative intent to protect borrowers and are not inconsistent with allowing an implied private right of action under the CLA. Section 32-5-103(4), MCA, provides:

Any act by a licensee in the making of a contract or in the collection of a loan made under the contract that violates the provisions of this chapter is void. The licensee has no right to collect, receive, or retain any principal, interest, or charges.

In addition, § 32-5-301(6), MCA, provides:

If any amount in excess of the charges permitted by this chapter is charged, contracted for, and received, except as the result of an accidental and bona fide error of computation, the licensee may not collect or receive any charges.

¶40 In *Transamerica Mortgage Advisors, Inc. v. Lewis ("Lewis")*, the United States

11

Supreme Court addressed the question of whether the Investment Advisors Act of 1940 (codified at 15 U.S.C. § 80b-15 *et seq.*) created a private right of action for damages or other relief in favor of persons harmed by violations of the act. *Lewis* (1979), 444 U.S. 11, 12-13, 100 S.Ct. 242, 243, 62 L.Ed.2d 146. There, the Court noted that the act did not expressly provide for a private cause of action and the only provision expressly allowing any suit to enforce the act authorized the Securities and Exchange Commission to bring suit in a federal district court to enjoin violations of the act. *Lewis,* 444 U.S. at 14, 100 S.Ct. at 244. Undeterred, a shareholder of Mortgage Trust of America brought suit on behalf of the Trust and the Trust's shareholders, arguing that clients of the investment advisers were the intended beneficiaries of the act and courts should therefore imply a private cause of action in their favor. *Lewis,* 444 U.S. at 15, 100 S.Ct. at 244-45. The United States Supreme Court held under § 215 of the act (15 U.S.C., § 80b-15) an aggrieved individual could maintain a limited private action for a violation of the act under a section rendering certain contracts void. The Court reasoned that clients of investment advisers were the intended beneficiaries of the act and that by declaring certain contracts void the section by its terms contemplated that the issue of voidness would be litigated somewhere. *Lewis,* 444 U.S. at 17-18, 100 S.Ct. at 246. "[W]hen Congress declared in §§ 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for recission or for an injunction against continued operation of the contract, and for restitution." *Lewis,* 444 U.S. at 19, 100 S.Ct. at 247.

¶41     Similarly, in *Transamerica Financial Corp. v. Superior Court ("Transamerica"),* the Arizona Supreme Court concluded that a private right of action was implied, in part,

"[b]ecause the determination of voidness under [the Arizona statute] only inures to the benefit of an individual borrower, a private right of action was contemplated by the legislature for enforcement of this individual right, even though other sections of the act provide for administrative action for enforcement of its regulatory scheme." *Transamerica* (Ariz. 1988), 761 P.2d 1019, 1021 (there the court also noted that a private right of action had been allowed judicially under a predecessor to the present Arizona statute and the legislature had not, despite amendments and modifications to the statute, disallowed the implied private right of action).

¶42     Also revealing as to legislative intent is the CLA's attorney fees provision. In 1981, the Legislature amended the act, in part, by providing for attorney fees in legal actions. Section 32-5-407(1), MCA, states:

> If the contract so provides, reasonable attorney fees may be awarded to the party in whose favor final judgment is rendered in any action on a contract entered into pursuant to the provisions of this chapter.

Under the logic advanced by Associates, only the Department of Administration could take action to enforce the CLA. If such were the case, there would be no need to provide in § 32-5-407(1), MCA, that a party could be awarded its fees in an action on a contract entered into pursuant to the act. At best, it could be anticipated that the Department would only bring some type of regulatory action; it would not bring an action on a contract to which it was not a party. The inclusion of the attorney fee provision is proof of a legislative intent to recognize a private right of action under the CLA.

¶43     Other courts have found an attorney fee provision indicative of legislative intent to allow for a private right of action. *See Cannon*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560

13

(concluding legislative intent to provide for a private right of action under Title IX based, in part, upon amendment allowing attorney's fees to the prevailing party); *see also California Paralyzed Veterans Ass'n v. F.C.C.* (Cal., 1980), 496 F.Supp. 125, 129 (concluding the passage of an attorney fee provision, along with other evidence, was persuasive evidence of Congress' original intent to provide for a private right of action under

section 503 of the Rehabilitation Act of 1973).

¶44    Here, the express language allowing the prevailing party to recover attorney fees "in any action on a contract entered into pursuant to the provisions of th[e] [CLA]" so long as such award is provided for in the parties' contract, is in accord with the District Court's conclusion that an implied private right of action is consistent with the legislative purpose in enacting the act.  Section 32-5-407(1), MCA.

¶45    Implying a private right of action in the CLA would not lead to an absurd result.  The act itself is for the protection of borrowers, and its enforcement by those it protects is in complete accord with its provisions.

¶46    The Montana Department of Administration has not appeared herein directly. However, the Montana Attorney General, presenting himself as the Chief Legal Officer of the State, has appeared by personally signing an amicus brief wherein he argues that there is a private right of action under the CLA and states: "If Associated [sic] Financial were successful in overturning the Eighth Judicial District Court's decision, Montana citizens would find themselves without redress provided for under the Montana Constitution and would be denied the very protection from predatory lending that the act was intended to prevent."  While the Attorney General's formally stated position is not exactly the same as

14

an interpretation by the Department of Administration, it does weigh in favor of a determination that there is an implied private right of action.

¶47    If the legislature had intended to prohibit a private cause of action under the CLA, it could have easily done so.  We conclude the District Court was correct in holding the CLA does provide a limited private right of action for individuals to bring suit.  For the reason pointed out below, we do not address the extent of that right.

## ISSUE 2

¶48    Does the CLA prohibit licensees from charging points on origination of real estate-secured loans?

¶49    The CLA prohibits a licensee, such as Associates, from charging a borrower any cost not specifically authorized.  Section 32-5-103(1), MCA, provides:

> [A] person may not engage in the business of making consumer loans in any amount and contract for, charge, or receive directly or indirectly on or in connection with any loan any charges, whether for interest, compensation, consideration, or expense, except as provided in and authorized by this chapter.

¶50    Section 32-5-301(1), MCA, provides: "[a] licensee or holder of a supplementary license under this part may contract for and receive on any loan of money interest charges as provided under 31-1-112."  Section 31-1-112(1), MCA,  provides "[a] regulated lender is exempt from all limitations on the rate of interest that it may charge and is exempt from the operation and effect of all usury statutes."  Thus, a regulated lender, Associates in this instance, is authorized to charge any rate of interest the market will bear.

¶51    If the points in question are interest, charging them to the borrower may not violate the act.  If they are not interest, the points are costs not specifically authorized by § 32-5-

15

301(5), MCA, and are unlawful. Or, if by adding these points to the principal of the loan at the beginning, the loan is converted from an interest-bearing loan to an add-on interest loan, § 32-5-301(3), MCA, was violated because there was no refund of a part of such charges. The question then becomes whether the points in question are interest.

¶52  Although not defined under the CLA, interest is generally defined as "a charge made for the use, forbearance, or detention of money . . . ." *Brummer v. TMG Life Ins. Co., Inc.* (D. Mont. 1992), 147 B.R. 552, 557.

¶53  Wombolds assert, in a somewhat confusing fashion, that by charging the points in question Associates has violated the CLA's prohibitions as they are unauthorized fees or, in the alternative, if these points are interest, such must be refunded upon prepayment, as required by § 32-5-301(3), MCA. During the course of this litigation, Associates changed its position on whether the points in question constitute interest. However, "a label placed upon a charge by the parties will not control the determination of whether that charge is interest . . . ." *Brummer,* 147 B.R. at 558.

¶54  Here, the parties have entered into a written stipulation in which they agreed that the issues on appeal include: (1) Does the CLA confer a private right of action, (2) Whether Associates violated the CLA by imposing prepaid finance charges/loan fees/discount points upon real estate-secured loans, and/or (3) Whether Associates violated the CLA by not crediting or refunding a portion of the prepaid finance charges/loan fees/discount points when a real estate-secured loan was paid in full prior to the maturity date of the loan through direct payment, re-financing or acceleration? By this stipulation the parties did not agree on whether the points in question are interest.

16

¶55   At oral argument counsel for Wombolds stated he did not disagree with Associates new position that the points were indeed interest.  However, this Court must, in order to correctly interpret the CLA, determine whether the points at issue, under the circumstances shown in the record, were charged, collected or not refunded in violation of the CLA.  Thus, notwithstanding the position of a party hereto, this Court must now make a determination of whether the points in question constituted interest authorized by § 32-5-301(1), MCA.

¶56   Associates argues that the Department of Administration, by its conduct over the years in not taking action to prohibit the charging of points, has interpreted the CLA to permit them.  It further argues that both the Department and the Attorney General as its counsel, by entering into a consent order in a different case, wherein a lender was allowed to charge points, have interpreted the CLA to mean that points are allowed.  It is true that interpretation of a law by an agency charged with its enforcement is entitled to deference.  *Montana Power Co. v. Cremer,* 182 Mont. at 280, 596 P.2d at 485.  However, in this case there is no actual interpretation of the CLA by the Department.  And, it is at least questionable whether, because of the questions asked and the answers given, the Department was aware of how points were charged and collected.  Further, the consent order referred to was a true compromise.  We are advised by the parties that under the terms of such consent order, the lender in that case could charge points, and in return the points were limited to 5% of the loan and could not be charged on a re-financed loan.  This compromise does not constitute an interpretation of the CLA by the Department of Administration and the Attorney General that points, as defined under the facts of this case, are interest and thus allowed.

¶57   Associates admit, in its brief and in the testimony of its expert, that the points charged

17

are, at least in part, to compensate the lender for various costs or services, that is, preparation of loan documents, obtaining and reviewing the borrower's credit report, helping the borrower complete a credit application, reviewing that application, title insurance, property appraisal, and preparing and recording a trust deed. Associates' expert states that such a fee "serves a different purpose from [ ] 'interest' in that it does not compensate the lender for the use of its money over time rather it serves to compensate the lender for the up-front service costs incurred in providing the loan."

¶58 The record establishes that Associates, in disclosure forms mandated by the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1605, 1606, 12 C.F.R. §§ 226.4, 226.22 advised its borrowers that the interest rate of the loan was one rate, and then after the addition of the points, which was called a "loan fee," the effective rate of interest was increased. These disclosures may have satisfied the requirements of the TILA, however, they also reveal that points are disclosed independently of interest before being combined in the Annual Percentage Rate and Finance Charge. Regardless, whether Associates complied with TILA is not an issue in this suit; rather this Court has before it the issue of whether Associates complied with Montana's CLA.

¶59 We conclude that the points charged on the loans in question are not interest; that is, they are not charged for the use, forbearance, or detention of money. Under the circumstances of this case and the provisions of the CLA, the imposition of a flat fee, computed as a percentage of the loan, bearing no direct relation to actual costs of specific services performed, front-loaded into the loan, which did not constitute a charge for the use of the lender's money over time, is not interest. These points are a fee charged by Associates

18

for making the loan. By the express language of the CLA, Associates was prohibited from charging fees not explicitly authorized under the act, § 32-5-103(1), MCA; § 32-5-301(5), MCA. Charging the fee described, which we have called points, violates the CLA despite Associates' clever attempt to disguise such charge as interest.

¶60 The Court is cognizant of the fact that the fees, called points herein, are often treated as interest in the lending industry, and when a borrower's home is involved such are deductible as interest under the United States Internal Revenue Code. However, the very intent of the CLA is to place strict limits on what charges licensees thereunder may make, in order to protect borrowers in the secondary lending market. We decline to interpret the CLA in such a way that it contains a loophole whereby predatory lenders may add points onto the beginning of an interest-bearing loan and thereby escape the requirement that such points be at least partially refunded if the loan is prepaid or refinanced.

## ISSUE 3

¶61 Does the CLA require a licensee to refund a portion of loan fees or points when a real estate-secured loan is paid in full before its maturity date?

¶62 Wombolds urge this Court to affirm the District Court's determination that, even if interest, Associates' failure to refund a portion of the points upon prepayment violates the CLA.

¶63 Refund of a portion of total charges on add-on interest loans is required by § 32-5-301(3), (7), MCA. Here, the loans in question are indeed interest-bearing loans and not add-on loans. Therefore, they are exempted from this requirement. Section 32-5-301(7), MCA. Interest-bearing loans, by their very nature, do not require a refund of interest because, until

19

it is earned, interest is neither charged nor collected. However, having already concluded in this instance that the points charged were not interest, but were a fee expressly prohibited by the act, we need not further address this issue.

## ISSUE 4

¶64 Because the District Court found that real estate-secured loans made by Associates to the Wombolds and the other subclass members violated the CLA, should the District Court have declared the loans void under § 32-5-103(4), MCA?

¶65 Wombolds assert this issue on cross-appeal. Simply put, Wombolds argue that the District Court erred in granting Associates' Rule 60(b) motion vacating the August 2002 judgment to the extent that the original judgment imposed the CLA remedy of voidness on the loans the District Court found to be in violation of the CLA.

¶66 As stated above, following Associates' motion, the District Court withdrew its judgment and entered an amended judgment. While not expressly reaching the issue of what remedies may be available for a violation of the CLA, the District Court's amended judgment includes statements that could be interpreted as doing so. As stated above, we express nothing in this Opinion concerning what remedies may or may not be available for a violation of the CLA.

¶67 The determination of a remedy is not included in the District Court's certification of issues being ripe for appeal under Rule 54(b), M.R.Civ.P. The parties' stipulation of the issues on appeal does not reference this issue. Therefore, we decline to reach it.

## CONCLUSION

¶68 The judgment of the District Court that Associates violated the CLA in its loans to the

subclass in which Plaintiffs Wombolds are members, is affirmed.  This matter is remanded to the District Court for further proceedings in conformity with this Opinion and applicable law.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON

Justice Jim Rice specially concurring.

¶69    I concur in the ultimate conclusions reached by the Court, and urged by the Respondents, that the loan practices of the Appellants violated the Montana Consumer Loan Act, and further, that the Act confers a private right of action to borrowers affected by those practices.   However, I reach the conclusion that the Act was violated under a different rationale than offered by the Court, one which would require a different holding with regard to that issue.

¶70    I depart from the Court on the issue of "points," that is, whether points are interest and can be lawfully charged under the Act.  The Court concludes that "[c]harging the fee . . . which we have called points, violates the CLA despite Associates' clever attempt to disguise such charge as interest." *See* ¶ 59.  I respectfully disagree.

¶71    It should be remembered that this case was submitted to the District Court and to this Court on stipulated facts.  It should also be emphasized that this case involves hundreds of different loans, which were not identically structured, or, in other words, are based on differing facts.  The Court's opinion subtly acknowledges the differences in the subject loans, *see* ¶ 14 for example, but renders a decision which fails to account for differences in individual loans which well could affect the law's application to those particular loans.  It does so, unfortunately, by relying on testimony in the record which is outside of the stipulated facts and, thus, engages in improper factfinding that should be reserved for litigation upon remand.  In order to reach its conclusion that points are not interest, the Court looks to, and adopts, the expert testimony offered by one of the parties.  *See* ¶ 57.  Again, such testimony is beyond the stipulation and beyond the District Court's action herein.

22

¶72    The Court correctly notes that the parties' stipulation does not include an agreement that points were interest. *See* ¶ 54. It fails to mention, however, that the District Court specifically found that points were interest ("[T]he Court finds that the loan fees constituted 'interest' as defined in § 31-1-104, MCA," p. 15, Revised Findings of Fact, Conclusions of Law and Order on Summary Judgment). Consistent therewith, the parties effectively adopted this finding as part of their stipulation by agreeing before this Court in oral argument that points were interest. Nonetheless, the Court rejects, without appropriate justification in my view, both the District Court's finding and the parties' agreement.

¶73    I would affirm the District Court's finding that points are interest. For purposes of brevity, I simply summarize my reasons for doing so. The statutory definition of interest in § 31-1-104, MCA, is very broad ("Interest is the compensation allowed by law or fixed by the parties for the use or forebearance or detention of money"). The points charged to the consumer were calculated as a percentage of the amount financed, and, as acknowledged by the parties at oral argument and by the Court, *see* ¶ 59, the points were separately disclosed to the consumer and then calculated with accruing interest for purposes of interest disclosure to the consumer under the Truth in Lending Act. Although the parties dispute the effect of the Department's actions in regard to this issue, it is undisputed that the Department took no action and routinely acquiesced in this treatment of points. Finally, treatment of points as interest has been approved by courts considering the issue. *See Layne v. Transamerica Fin. Services* (Ariz. 1985), 707 P.2d 963, 966.

¶74    Thus, points being interest, it was permissible for Appellants to assess the points pursuant to § 32-5-301(1), MCA. That provision of the Act incorporates § 31-1-112, MCA,

23

which also exempts Appellants from the "operation and effect" of all usury laws. This policy was further clarified by the Legislature's repeal of the ban on the compounding of interest in 1985. Therefore, the assessment of interest on the points, i.e., "compounding," is likewise permitted. Indeed, this "loophole for predatory lenders" criticized by the Court does exist and is allowed by the law. *See* ¶ 60.

¶75 That is not the end of the matter, however, for two reasons. First, as mentioned above, not all of the subject loans are identically structured. Differing facts could well lead to a different conclusion about whether points are interest in individual cases. If, for example, the points were not included in interest disclosure documents, or were not calculated as a percentage of the amount financed, these facts could lead the trial court to conclude that the points were not interest, and therefore, prohibited by the Act under the Court's reasoning in ¶ 60. On remand, loans which fall outside the facts on which this opinion is premised would be subject to further litigation.

¶76 Secondly, though the points assessed under the agreed facts are considered interest, Appellants nonetheless have violated the Act. The Act acknowledges only two kinds of loans, those being "add-on" and "interest-bearing." "Add-on" loans are provided some definition pursuant to § 32-5-301, subsections (2) and (7), as loans which assess interest "at the time the loan is made" even if "the loan is payable in installments." "Interest-bearing" loans are not defined by the Act, although it can be reasonably inferred that "interest-bearing" loans are those which bear or accrue interest over the life of the loan. What is clear, however, is that Appellants are charging interest both ways: adding-on interest up front, and also assessing interest over the life of the loan. Therefore, by charging points (interest) up

24

front, Appellants are bound by the provisions of the Act which apply to "add-on" loans, including the necessity of refunding the appropriate portions of those assessments when the loan was paid off or otherwise re-financed. There is no other way in which to apply the Act to a consumer lender which engages in the practice of assessing up-front interest.

¶77 Therefore, I would reach the conclusion under Issue 3 that Appellants violated the Act by failing to so comply. I, thus, concur in the Court's conclusions that the Act has been violated, and that Respondents have a private cause of action to remedy those violations.

/S/ JIM RICE