No. 03-743

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 217

GARY WINSLOW,

        Plaintiff and Appellant,

    v.

MONTANA RAIL LINK, INC., a Montana corporation,

        Defendant, Respondent and Cross-Appellant.

APPEAL FROM:    The District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 97-552,
Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Erik B. Thueson, Thueson Law Office, Helena, Montana

                Dennis Patrick Conner, Conner & Shannon, Great Falls, Montana

                James T. Towe, Towe Law Office, Missoula, Montana

        For Respondent:

                Randy Cox and Natasha Prinzing Jones, Boone & Karlberg,
Missoula, Montana

                David Potter and Jennifer Eggers, Oppenheimer, Wolff & Donnelly,
Minneapolis, Minnesota

                Submitted on Briefs:  June 8, 2004

                            Decided:  September 6, 2005

Filed:

                                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     This case involves claims of negligent management resulting in discharge from employment brought by Gary Winslow (Winslow) against Montana Rail Link, Inc. (MRL), in the First Judicial District Court, Lewis and Clark County. The District Court initially dismissed Winslow's claim for lack of jurisdiction, which was reversed by this Court in *Winslow v. Montana Rail Link, Inc.*, 2000 MT 292, ¶ 27, 302 Mont. 289, ¶ 27, 16 P.3d 992, ¶ 27 (*Winslow I*). After remand, the case went to trial and the jury concluded that MRL had acted negligently and awarded Winslow compensatory damages. The jury further determined that punitive damages should be assessed, but specifically found that MRL had not acted with malice regarding its termination of Winslow's employment, an apparent inconsistency. The District Court then ruled that, pursuant to § 27-1-221, MCA, a finding of malice is a prerequisite for imposition of punitive damages, and dismissed the jury without allowing deliberation on punitive damages. Winslow appeals from the rulings of the District Court, but does not challenge the jury's verdict on his negligence claim and the damages awarded thereunder. He seeks only "a new trial limited to a determination of the amount of punitive damages." Additionally, Winslow asks this Court to grant attorney fees and sanctions.

¶2     Given this posture of the case, we conclude it is unnecessary to address a number of issues Winslow has raised on appeal, as they are directed to the trial and the unchallenged verdict on Winslow's negligence claim, including whether MRL: (1) made misrepresentations to the jury; (2) interjected collateral sources; (3) presented an unlawful defense that its

2

compliance with the grievance procedure under the collective bargaining agreement absolved it of liability; and whether the District Court: (4) deprived Winslow of his right to present evidence that MRL had an ongoing hidden business plan designed to discourage the reporting of work-related injuries; and (5) failed to instruct the jury that an award of interest could be awarded pursuant to § 27-1-212, MCA.[1]

¶3     MRL cross-appeals from the District Court's denial of its summary judgment and Rule 50(b), M.R.Civ.P., motions.  We affirm all issues.

¶4     The following issues are dispositive on appeal:

¶5     Did the District Court err in denying MRL's summary judgment and Rule 50(b) motions by incorrectly concluding that § 39-2-703, MCA, provides Winslow with a statutory cause of action?

¶6     Did the District Court err in denying MRL's motion for summary judgment and its subsequent Rule 50(b) motion on the merits of Winslow's negligent management claim?

¶7     Did the District Court err by not allowing the jury to deliberate on the amount of punitive damages?

---

[1]Within his extensive briefing, Winslow also offers a very brief request that the Court strike the jury's determination that he was contributorily negligent on the grounds that the jury's determination that punitive damages should be assessed makes contributory negligence irrelevant, and that contributory negligence is not mentioned by the mismanagement statute.  We conclude that our resolution of the punitive damage issue herein resolves this request and that contributory negligence was a proper consideration herein.  However, we reserve further judgment on these issues in some case when they have been fully briefed.

¶8    Did the District Court abuse its discretion in concluding that MRL properly responded to discovery and should not be subject to sanctions?

## FACTUAL AND PROCEDURAL BACKGROUND

¶9    Winslow, who is a member of the Brotherhood of Locomotive Engineers (BLE) labor union, obtained employment at MRL as a switchman in 1988. The terms of Winslow's employment agreement were governed by a Collective Bargaining Agreement (CBA) between BLE and MRL. The CBA provided that Winslow, after completing the probationary period, could not be dismissed absent just cause and without an impartial fact-finding hearing, which included mandatory procedures concerning the assessment of discipline and subsequent internal appeals. In addition, MRL required its employees to be honest, and to report all information related to on-duty and off-duty injuries affecting job performance.

¶10    On March 13, 1992, Winslow's treating physician, Dr. Earl Book (Dr. Book), diagnosed Winslow with a left femoral hernia. On March 24, 1992, Winslow filed an injury report with MRL claiming that he "strained something," but did not disclose that a hernia had been diagnosed two weeks earlier. Winslow claimed that he did not think he had to inform MRL about the hernia diagnosis because it did not interfere with his ability to work. Even though Dr. Book recommended hernia-repair surgery, Winslow opted to not seek further treatment at that time because the pain dissipated. However, between 1992 and 1995 Winslow experienced increasing pain in his groin area.

¶11    On September 7, 1995, Winslow attempted to "throw" a railroad switch, and as a result felt a hot, burning pain in his groin, inhibiting his ability to walk.  Winslow filed an MRL injury report describing the pain, and signed a written authorization allowing MRL to obtain medical information from "any physician . . . who has examined or treated [Winslow] in regard to the injury."  The following day, Dr. Book examined Winslow and concluded that the groin pain was related to the hernia he had originally diagnosed in 1992.  Upon the advice of Dr. Book, Winslow decided to have hernia-repair surgery.

¶12    On September 8, 1995, Winslow informed his supervisor, Tim VanOrden (VanOrden), that he had a hernia and was making arrangements to have it repaired.  MRL's claims manager, Mark Bjorlie, commenced an investigation and obtained Winslow's medical records which disclosed that his hernia was first diagnosed in 1992.  Although Winslow would claim that he never represented to anyone that the hernia was caused by the throwing of the switch on September 7, 1995, MRL asserted in later proceedings that Winslow led VanOrden to believe that his hernia initially appeared on September 7, 1995, and that the hernia-repair surgery was first recommended by Dr. Book the following day.

¶13    After Winslow's hernia-repair surgery, he submitted his medical bills to MRL for payment.  In October Winslow was briefly re-hospitalized to be tested for possible blood clots, which further increased medical costs.  Thereafter, Winslow attempted to pay the medical expenses through Blue Cross/Blue Shield (Blue Cross), which administers MRL's self-insured medical plan.

5

¶14    Winslow returned to work in October 1995 and began to receive notices from Blue Cross that indicated it was not paying Winslow's medical bills. Winslow gave the notices to VanOrden. MRL subsequently sent Winslow a written order requiring him to attend a fact-finding hearing to address his "failure to provide factual information regarding [his] injury."

¶15    The MRL fact-finding hearing commenced on January 10, 1996, the purpose and effect of which were contested at trial. Winslow attended, but was not represented by counsel. At the hearing, VanOrden stated that Winslow led him to believe that the hernia first appeared on September 7, 1995, and that surgery was first recommended at that time. MRL noted that Winslow initially denied having knowledge of the hernia in 1992, but finally admitted that he was aware of it when confronted with his medical records, and argued that Winslow's failure to report that he had a hernia three years earlier rendered his claim fraudulent. Winslow countered by arguing that MRL presented no evidence at the hearing that he had represented that his hernia was as a direct result of the switch incident, that he had not been dishonest with VanOrden, and that his injury report was accurate.

¶16    On January 19, 1996, MRL notified Winslow that he was being terminated from employment because Winslow had been repeatedly dishonest, and had failed to report all of the facts to MRL surrounding his hernia in violation of MRL rules. MRL further concluded that Winslow's hernia was not work-related, and informed Winslow's medical providers to this effect.

6

¶17    Following the termination of his employment, and after MRL denied Winslow's internal appeal, Winslow submitted his case to arbitration before the Special Board of Adjustment (SBA) as provided in the CBA. The SBA met on December 20, 1996, affirmed Winslow's termination, and concluded that Winslow received a fair and impartial fact-finding hearing.

¶18    On August 29, 1997, Winslow filed a complaint in the First Judicial District Court, Lewis and Clark County, claiming that MRL "negligently mismanaged its investigation" and that he was wrongfully discharged. Winslow argued that, pursuant to § 39-2-703(1), MCA, MRL's termination constituted "mismanagement and neglect." Section 39-2-703(1), MCA, provides in pertinent part:

> Every person or corporation operating a railway or railroad in this state is liable for all damages sustained by any employee of such person or corporation in consequence of the neglect of any other employee thereof or by the mismanagement of any other employee thereof and in consequence of the willful wrongs, whether of commission or omission, of any other employee thereof when such neglect, mismanagement, or wrongs are in any manner connected with the use and operation of any railway or railroad on or about which he is employed.

¶19    The District Court initially dismissed Winslow's complaint for lack of jurisdiction on MRL's Rule 12(h), M.R.Civ.P., motion, concluding that Winslow's claim "requires interpretation of the CBA and is therefore preempted" by the Railroad Labor Act (RLA), 45 U.S.C. §§ 151-188. *Winslow I*, ¶ 26. However, this Court reversed, concluding that the plain language of Winslow's complaint properly invoked the mismanagement provisions of

7

§ 39-2-703, MCA, made no reference to the CBA, and therefore was not preempted by the RLA. *Winslow I*, ¶ 27.

¶20 After remand, the case proceeded to jury trial on Winslow's claims that MRL was liable for negligent mismanagement and retaliatory discharge. On June 11, 2003, the jury returned a verdict concluding that each party was negligent, allocating 61.25 percent liability to MRL, and 38.75 percent liability to Winslow. Applying this determination to the damage award, the District Court entered a judgment against MRL in the amount of $384,328.43. After the jurors were polled about the verdict, one of the jurors was excused to fulfill a commitment he had explained during jury selection. The next day, the parties met *in camera* to discuss the apparent inconsistency in the jury's special verdict, on punitive damages–that MRL had not acted with malice with respect to its termination of Winslow, but that punitive damages should nonetheless be assessed. After taking arguments, the District Court concluded that punitive damages could not be assessed under the verdict pursuant to § 27-1-221, MCA, which requires a finding of actual malice or actual fraud. Consequently, the District Court accepted the jury's verdict and released the eleven remaining jurors.

¶21 Throughout the proceeding, Winslow asserted that MRL engaged in discovery abuses which delayed and multiplied the proceedings and prevented him from receiving a fair and speedy trial. However, the District Court declined to impose sanctions.

¶22 On July 7, 2003, Winslow filed a notice of appeal. On July 29, 2003, MRL filed a notice of cross-appeal.

**STANDARD OF REVIEW**

¶23     This Court reviews a district court's ruling on summary judgment *de novo. Wombold v. Assocs. Fin. Servs. Co. of Mont. Inc.*, 2004 MT 397, ¶ 29, 325 Mont. 290, ¶ 29, 104 P.3d 1080, ¶ 29. Thus, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court. *Peyatt v. Moore*, 2004 MT 341, ¶ 13, 324 Mont. 249, ¶ 13, 102 P.3d 535, ¶ 13. Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Watkins Trust v. Lacosta,* 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citing Rule 56(c), M.R.Civ.P.).

¶24     A judgment as a matter of law entered pursuant to Rule 50(b), M.R.Civ.P., may be granted only when it appears, as a matter of law, that a party could not prevail upon any view of the evidence. *Massee v. Thompson*, 2004 MT 121, ¶ 25, 321 Mont. 210, ¶ 25, 90 P.3d 394, ¶ 25. Motions for judgment as a matter of law are proper only when there is a complete absence of evidence to warrant submission to a jury. *Kneeland v. Luzenac Am. Inc.*, 1998 MT 136, ¶ 53, 289 Mont. 201, ¶ 53, 961 P.2d 725, ¶ 53.

¶25     Prejudice is never presumed on appeal, and a judgment will not be reversed merely because the lower court erred. In order to reverse, it must affirmatively appear that the error has affected substantial rights of the defendant regarding the merits of the case. *State v. DeTienne* (1985), 218 Mont. 249, 257, 707 P.2d 534, 539.

¶26     This Court generally will defer to the decision of a trial court regarding sanctions for failure to comply with discovery procedures because the trial court is in the best position to know whether parties are disregarding the rights of opposing parties in the course of litigation. *Lewistown Propane Co., v. Moncur*, 2002 MT 349, ¶ 22, 313 Mont. 368, ¶ 22, 61

P.3d 780, ¶ 22. We review discretionary district court rulings for abuse of discretion. *Anderson v. Werner Enter., Inc.*, 1998 MT 333, ¶ 13, 292 Mont. 284, ¶ 13, 972 P.2d 806, ¶ 13. Moreover, the party assigning error to the trial court's discovery rulings must show prejudice. *Anderson*, ¶ 13.

## DISCUSSION

**¶27    Did the District Court err in denying MRL's summary judgment and Rule 50(b) motions by incorrectly concluding that § 39-2-703, MCA, provides Winslow with a statutory cause of action?**

¶28    On cross-appeal, MRL argues that § 39-2-703, MCA, does not provide Winslow with a statutory "mismanagement" cause of action. MRL explains that this Court concluded, upon rehearing in *Dillon v. Great N. Ry.* (1909), 38 Mont. 485, 100 P. 960, that:

> Upon further consideration . . . we think there is not any room for doubt that in enacting sections 5251 and 5252, Rev. Codes [later codified as § 39-2-703, MCA], the Legislature did not intend to create any new right of action, but merely recognized a right of action existing at common law and sought to make that right available, notwithstanding the negligence of a fellow servant.

*Dillon*, 38 Mont. at 504, 100 P. at 966. MRL explains that the Legislature did not recognize, let alone codify, a common-law action for mismanagement of employee terminations. MRL argues that *Winslow I* did not precisely consider whether § 39-2-703(1), MCA, provides plaintiffs with a statutory cause of action, but merely "assumed" that it did, and, consequently, *Winslow I*, in contrast to *Dillon*, cannot be considered *stare decisis* on this issue.

10

¶29　We reasoned in *Winslow I* that § 39-2-703, MCA, "in very broad language," provides that railways are "'liable for all damages sustained by any employee' as a consequence of the 'mismanagement' of any other employee when such mismanagement is 'connected with the use and operation' of any railway." *Winslow I*, ¶ 19 (citations omitted). We concluded that § 39-2-703, MCA, is not limited to personal injuries caused by co-workers to the exclusion of mismanagement in the handling of an employee termination. *Winslow I*, ¶¶ 19-20. We explained that "[a]lthough personal injury resulting from the neglect of a co-worker would be included within the ambit of the statute, so are damages which result from mismanagement connected with the operation of the railroad." *Winslow I*, ¶ 19.

¶30　When this Court, in deciding a case presented, states a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal. *Marie Deonier v. Paul Revere Life Ins. Co.*, 2004 MT 297, ¶ 75, 323 Mont. 387, ¶ 75, 101 P.3d 742, ¶ 75. The issue of whether § 39-2-703, MCA, provides Winslow with a statutory cause of action was sufficiently addressed in *Winslow I* to serve the purposes of law of the case and will not be revisited here. Therefore, we conclude that the District Court did not err in denying MRL's summary judgment and Rule 50(b), M.R.Civ.P., motions based upon the law of the case established in *Winslow I*.[2]

---

[2] We further clarified the statutory interpretation of § 39-2-703, MCA, in *Haux v. Mont. Rail Link., Inc.*, 2004 MT 233, ¶ 14, 322 Mont. 456, ¶ 14, 97 P.3d 540, ¶ 14 ("Although MRL argues, quoting *Dillon* . . . that the 'legislature did not intend to create any new right of action, but merely recognized a right of action existing at common law'. . . the language of the statutory section clearly provides for a right of action for

11

**¶31 Did the District Court err in denying MRL's motion for summary judgment and its subsequent Rule 50(b) motion on the merits of Winslow's negligent management claim?**

¶32 Alternatively, MRL argues that the District Court erred when it denied its motion for summary judgment and its subsequent Rule 50(b) motion for judgment as a matter of law on Winslow's negligent mismanagement claim. MRL explains that the holding in *Winslow I* was based upon a motion to dismiss and was determined solely upon the allegations of the pleadings. MRL therefore contends that the *Winslow I* Court did not substantively determine whether Winslow's claims were preempted by the RLA or the Employee Retirement Income Security Act (ERISA). In light of the evidentiary record, which was not reviewed in *Winslow I*, MRL contends that the issue of preemption must be reconsidered.

¶33 Regarding preemption under the RLA, MRL argues that Winslow's claim of negligent mismanagement is based directly on rights created by Winslow's CBA and therefore constitutes a "major dispute" as defined under the RLA, and therefore subject to the RLA's mandatory arbitral mechanism for settlement. MRL explains that a major dispute under the RLA relates to the formation or modification of the contractual rights provided for by a CBA, whereas minor disputes involve interpretation or application of agreements covering rates of pay, rules, or working conditions. MRL argues that Winslow challenged the grievance process and work rules thereby attempting to alter existing contractual rights which constitutes a "major dispute." MRL contends that Winslow presented his state-law claim of

mismanagement." (emphasis omitted)).

negligent mismanagement in a manner that necessarily required the court or jury to interpret existing provisions of his CBA, and that this fact alone mandates preemption since claims "founded directly on rights created by [CBAs]" are preempted by the RLA.[3] *Cramer v. Consol. Freightways, Inc.* (9th Cir. 2001), 255 F.3d 683, 689. Thus, in consideration of the evidence adduced, MRL argues that this Court must reverse the District Court's denial of MRL's motion for judgment as a matter of law because Winslow's negligent mismanagement claim is preempted by the RLA.

¶34 Winslow responds that the RLA does not preempt his negligent mismanagement claim because the law of the case doctrine applies per *Winslow I*, and therefore the issue may not be re-litigated. Winslow also explains that other jurisdictions have recognized state law claims that are not preempted by the RLA. Moreover, Winslow argues that he continually objected to the relevancy and admissibility of evidence of the CBA's grievance process and decision that MRL offered, and that he therefore had a right to attack the validity and fairness of the grievance process, the decision against Winslow arising therefrom, and whether MRL had properly complied with the process. Consequently, Winslow asserts that MRL misrepresents that the CBA's presence in the case was due solely to Winslow's own claims.

---

[3] MRL explains that Winslow made numerous claims founded upon the terms of the CBA including: (1) that MRL acted unreasonably by failing to follow CBA procedures; (2) that MRL failed to provide Winslow rights that he was entitled to under the CBA; (3) that the arbitration process created in the CBA did not adequately protect Winslow during MRL's fact-finding process; and (4) that the termination process established in the CBA, was unreasonable.

¶35    The United States Supreme Court has held that a state claim is independent of a CBA for preemption purposes so long as the state claim can be resolved without interpreting the CBA itself. *Lingle v. Norge Div. of Magic Chef* (1988), 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410, 421. In *Hawaiian Airlines, Inc. v. Norris* (1994), 512 U.S. 246, 257, 114 S.Ct. 2239, 2249, 129 L.Ed.2d 203, 214, the United States Supreme Court explained that "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." *See also Missouri Pac. R. Co. v. Norwood* (1931), 283 U.S. 249, 51 S.Ct. 458, 75 L.Ed. 1010. The United States Supreme Court also held in *Terminal R.R. Assn. of St. Louis v. Trainmen* (1943), 318 U.S. 1, 6-7, 63 S.Ct. 420, 423, 87 L.Ed. 571, 578, that "the enactment by Congress of the [RLA] was not a preemption of the field of regulating working conditions themselves . . . ." The United States Supreme Court further limited the scope of RLA preemption in *Andrews v. Louisville & Nashville R. Co.* (1972), 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95, 97, when it held that a state law claim of wrongful termination was preempted, *not* because the RLA broadly preempts state law claims based on discharge or discipline, but because the employee's claim was firmly rooted in a breach of the CBA itself.

¶36    Winslow has consistently argued that his theory did not involve the CBA, but instead pertained to allegations that MRL used a false pretext to fire him in order to further a scheme designed to intimidate railroad workers so that they would not file injury reports. After review of the record, we conclude that Winslow's claims are not "firmly rooted" in a breach of the CBA itself, but instead are premised upon the provisions of § 39-2-703, MCA, which

14

is a state law claim. *See Winslow I*, ¶ 27. Thus, we conclude that the District Court properly denied MRL's motion for summary judgment and its subsequent Rule 50(b), M.R.Civ.P., motion as to RLA preemption.

¶37 As to ERISA, MRL argues that Winslow's state law claims about improper handling of medical benefits and negligent management of employee benefit plans are preempted by ERISA, which is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefits plans." *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490, 497. Winslow responds that MRL did not properly raise its ERISA preemption argument on appeal and waived it as an affirmative defense under Rule 8(c), M.R.Civ.P.

¶38 Other jurisdictions have held that ERISA preemption in benefits-due actions "must be pleaded timely as an affirmative defense." *Wolf v. Reliance Std. Life Ins. Co.* (1st Cir. 1995), 71 F.3d 444, 449-50. This Court has previously held that "an affirmative defense is waived if not set forth affirmatively." *Nitzel v. Wickman* (1997), 283 Mont. 284, 312, 940 P.2d 451, 456. Moreover, "an affirmative defense . . . is waived if it is not raised in the answer to a claim." *Marias Healthcare Services, Inc. v. Turenne*, 2001 MT 127, ¶ 9, 305 Mont. 419, ¶ 9, 28 P.3d 491, ¶ 9. Because MRL failed to raise its ERISA argument until years after the commencement of the litigation, we conclude the District Court properly denied MRL's ERISA defense on the basis of waiver.

¶39 **Did the District Court err in disallowing the jury to deliberate on the amount of punitive damages?**

15

¶40     The jury returned a verdict regarding punitive damages which determined that MRL did not act with malice with respect to its termination of Winslow, but that punitive damages should be assessed.  Immediately after the verdict was entered, one of the twelve jurors was excused by the District Court, precluding further deliberations unless undertaken by "less than twelve" jurors pursuant to § 3-15-106, MCA, which permits such deliberations only upon agreement between the parties and approval of the court.  Subsequent to the dismissal of the juror, the following conversation occurred *in camera*:

> THE COURT: The other issue is that I did release [the juror].  [The juror] told us when he started this three weeks ago that he had to be out of town . . . on the 12th and I believe I said at that time we were going to be done by the 12th. We are still not done, although it may be that the jury will not be asked to do anything tomorrow.  That remains to be seen as to what happens.  But in any event, I did excuse him because he said he would not be available from the 12th on.  I understand that could possibly cause a problem, but that's what I did.  Go ahead, Mr. Conner, you wanted to make a record of that–Mr. Thueson.
>
> MR. THUESON: No, Your Honor, we're okay with it.[4]
>
> MR. CONNER: Just what is the defense position though? Did they consent to this?
>
> MR. POTTER: We're going to take the Court's invitation and appear tomorrow morning and put our position on the –
>
> MR. CONNER: Are they going to consent?
>
> MR. COX: We don't have to state that right now and we're not going to.
>
> . . . .

---

[4] Mr. Thueson and Mr. Conner are counsel for Winslow.  Mr. Cox and Mr. Potter are counsel for MRL.

MR. POTTER: We were not consulted, and we don't take a position. We'll let you know in the morning.

THE COURT: Okay.

Although Winslow's counsel did not object to the dismissal of the juror, MRL took the position the following morning that it would not consent to a jury of eleven members and noted that it was not consulted in the matter prior to the juror's dismissal.

¶41    Winslow argues that MRL used "offensive trial tactics" by sitting on its hands when the District Court informed the parties that it had dismissed one of the twelve jurors and objecting to the dismissal only after the juror was no longer available, and therefore, the loss of a juror should not bar his claim to a new trial on punitive damages. MRL contends that it lost the benefit of a full jury through no fault of its own, and that an eleven-person jury could not validly consider punitive damages because the requirements of § 3-15-106(1), MCA, including MRL's consent in open court to deliberation by less than twelve jurors, had not been established.[5]

¶42    On appeal, Winslow does not take issue with the District Court's dismissal of the juror for the juror's pre-announced commitment. Although that position is consistent with his comments at trial, it would appear that Winslow had no timely opportunity to object because he learned of the dismissal only after it had occurred. That notwithstanding, we

---

[5] "A trial jury consists of 12 persons or, with the approval of the court, it may consist of any number less than 12 upon which the parties agree in open court." Section 3-15-106(1), MCA.

17

cannot accept Winslow's argument that MRL somehow waived its objection to the juror's dismissal by accepting the District Court's invitation to place its position on the record the next morning, when it objected. Under these circumstances, we cannot conclude that MRL either consented or acquiesced to the juror's dismissal.

¶43 Consequently, given the District Court's unchallenged dismissal of the juror, however troubling, the only way the trial could have continued was with less than twelve jurors pursuant to § 3-15-106(1), MCA. That provision requires the parties to agree in open court to deliberation by a lesser number of jurors. Such an agreement did not exist here, as MRL did not consent in open court to a jury of less than twelve persons.

¶44 We must conclude that the District Court did not err by not allowing the jury to deliberate regarding punitive damages. Because, for this reason, deliberations on punitive damages could not have occurred in any event, we need not reach the District Court's interpretation of the verdict pursuant to § 27-1-221, MCA, or the other issues Winslow raises relative to punitive damages, including challenges to the punitive damage instructions, the verdict form and the jury's determination of contributory negligence by Winslow.

¶45 **Did the District Court abuse its discretion in concluding that MRL properly responded to discovery and should not be subject to sanctions?**

¶46 Winslow argues that MRL persistently engaged in discovery abuses that delayed the proceedings, prevented a fair trial, and precluded the admission of relevant evidence. Winslow contends that MRL should be sanctioned for obstructing witnesses, concealing information, and for improper use of boilerplate objections. MRL responds by arguing that

18

the District Court, after thorough review, concluded that MRL properly responded to discovery, did not obstruct witnesses, did not conceal information, and did not improperly state objections.

¶47 This Court has previously held that when litigants and their attorneys abuse the Montana Rules of Civil Procedure, they are subject to sanctions. *Bulen v. Navajo Ref. Co., Inc.*, 2000 MT 222, ¶ 19, 301 Mont. 195, ¶ 19, 9 P.3d 607, ¶ 19. Furthermore, when litigants use willful delay, respond evasively, or disregard court directions as part and parcel of their trial strategy, they must suffer the consequences. *Bulen*, ¶ 19.

¶48 The lengthy litigation which marked this matter involved numerous unique questions of law leading to the first appeal in *Winslow I*, which addressed the legal validity of Winslow's claims after they had been dismissed by the District Court. On remand, the prosecution of Winslow's claims involved difficult issues of proof. Plaintiff's counsel skillfully established Winslow's claims in the face of resolute advocacy by defense counsel. It is in the context of this long and difficult litigation that the sanctions issues arise.

¶49 We review a district court's sanction orders under the deferential abuse of discretion standard "because the trial court is in the best position to know whether the parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate." *Lewistown Propane*, ¶ 22 (quoting *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172). Even so, we have reviewed each of the numerous motions to compel, for protective orders, and for sanctions and the orders issued by the District Court in response thereto. After that careful review, and in the

19

context of this complex and groundbreaking litigation, we cannot conclude that the District Court abused its discretion, nor that Winslow has established that the trial court's discovery rulings caused "prejudice" or "materially affected [his] substantial rights." *Anderson*, ¶ 13. We therefore affirm the District Court on these issues.

¶50    Affirmed.


/S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART


Justice Patricia O. Cotter concurs.

¶51    I concur in the ultimate result reached by the Court, but I disagree with the Court's analysis of the issue of the dismissed juror and the denial of further deliberations on punitive damages.

¶52    At ¶ 42, the Court correctly notes that Winslow had no opportunity to object to the dismissal of the juror because he did not learn of it until after it had occurred.  The Court,

however, declines to conclude that the District Court erred by dismissing the juror *sua sponte*, because Winslow failed to specify on appeal that such action was error. So, the Court calls the court's dismissal of the juror "troubling," and leaves it at that. I do not share the Court's reluctance to address whether error occurred, as I think an important component of our job is to identify error when we see it, so that the same error might be avoided in the future.

¶53 I would conclude that, in dismissing the juror without the advance consent of the parties, the District Court erred. By doing so, the court handed the party with the most to lose--in this case, MRL--a *fait accompli*. With the juror already excused and gone, all MRL had to do to escape consideration of the punitive damages conundrum was refuse to agree to a jury of eleven, which it did. This was both unfair to Winslow and inconsonant with the intent of § 3-15-106, MCA, which contemplates both approval of the court *and* agreement of the parties before a jury of fewer than twelve may proceed. I would hold that it is error for a district court to excuse a juror while questions remain as to the meaning and intent of a jury verdict, without first giving the parties a meaningful opportunity to consent or object.

¶54 However, though I believe the District Court erred, I would nonetheless conclude that we can give Winslow no affirmative relief on appeal because Winslow does not seek or appear willing to accept a complete retrial on both liability and punitive damages. Winslow makes it clear that he wants to retain the benefits of the compensatory verdict (albeit unreduced for comparative fault), with remand for trial on punitive damages only. The statutes allowing for an award of punitive damages do not contemplate such relief.

21

¶55 Section 27-1-220(1), MCA, provides, in pertinent part, that "a judge or jury may award, *in addition to compensatory damages*, punitive damages for the sake of example and for the purpose of punishing a defendant." (Emphasis added.) In addition, § 27-1-221(6), MCA, provides that liability for punitive damages must be determined by the trier of fact. Thus, a fact-finder cannot assess punitive damages until it has first decided to give compensatory damages, and has decided that the proof supporting those damages also justifies, by clear and convincing evidence, an award of punitive damages. A punitive case cannot be heard in a vacuum, nor can one fact-finder assess compensatory damages and then leave to a wholly different fact-finder the question of whether the plaintiff's proof from the first case entitles him to punitive damages. The case cannot be split. Because Winslow has chosen to retain the benefits of the compensatory award--a logical decision in light of the difficulty of the case--I would conclude we cannot remand for trial on punitive damages alone. Therefore, I concur in the result reached by the Court.

/S/ PATRICIA O. COTTER

Justice James C. Nelson joins in the concurrence of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

22