FILED

May 11 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0205

DA 15-0205

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 111

MARK IBSEN, INC., D/B/A URGENT CARE
PLUS, on behalf of itself and all those
similarly situated,

       Plaintiff and Appellant,

  v.

CARING FOR MONTANANS, INC., F/K/A
BLUE CROSS AND BLUE SHIELD OF
MONTANA, INC., and HEALTH CARE
SERVICE CORP., and JOHN DOES I-X,

       Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. BDV 2014-270
                Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           John M. Morrison (argued), Linda M. Deola, Morrison Sherwood Wilson
           & Deola, PLLP, Helena, Montana

           John Heenan, Bishop & Heenan, Billings, Montana

       For Appellees:

           Michael F. McMahon (argued), Stefan T. Wall, McMahon, Wall
           & Hubley, PLLC, Helena, Montana
           (*Attorneys for Caring for Montanans, Inc.*)

           Stan Kaleczyc (argued), Kimberly A. Beatty, Christy S. McCann,
           Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana
           (*Attorneys for Health Care Service Corp.*)

For Amici:

    Jesse Laslovich, Chief Legal Counsel, Lucas Hamilton, Legal Intern, Office of the Commissioner of Securities and Insurance, Montana State Auditor, Helena, Montana
    (*Attorney for Montana State Auditor*)

    Lawrence A. Anderson, Attorney at Law, P.C., Great Falls, Montana
    (*Attorney for Montana Trial Lawyer Association's*)

Argued and Submitted:  February 24, 2016

Decided:   May 11, 2016

Filed:

Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Mark Ibsen, Inc., doing business as Urgent Care Plus (hereinafter Ibsen), owned and operated the Urgent Care Plus medical clinic in Helena, Montana. The clinic employed numerous employees and was a small business member of the Montana Chamber of Commerce. Ibsen purchased health insurance coverage for its employees from Blue Cross and Blue Shield of Montana (BCBSMT) through the Chamber of Commerce's program known as "Chamber Choices." In July 2013, Health Care Service Corporation (Health Care) acquired BCBSMT's existing health insurance business and BCBSMT changed its name to Caring for Montanans, Inc. (Caring). In April 2014, Ibsen filed a complaint and class action against Caring and Health Care alleging that they had violated the Unfair Trade Practices Act (UTPA or the Act) by charging Ibsen and other similarly situated employers, excessive premiums and using the excess collections to pay kickbacks to the Chamber of Commerce. Following removal to federal court and a remand back to the First Judicial District Court, Helena, Montana, in March 2015, the District Court granted Health Care's motion to dismiss and Caring's motion for summary judgment. The court determined that the UTPA did not provide private litigants such as Ibsen with a private right of action to seek enforcement of the Act. Ibsen appeals. We affirm.

## ISSUE

¶2 The issue on appeal is whether Ibsen may maintain a private right of action for violation of §§ 33-18-208 and -212, MCA, of the UTPA, or, in the alternative, whether Ibsen's claims can be sustained as common law claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 For several years and until December 2015, Ibsen owned and operated the Urgent Care Plus Clinic in Helena, Montana. Ibsen became a small business member of the Montana Chamber of Commerce and during 2011, 2012, and 2013, it elected to provide health insurance coverage for its employees through a Chamber program known as "Chamber Choices." It chose BCBSMT, a "Chamber Choice" vendor, as its provider and paid monthly premiums to BCBSMT.

¶4 In accordance with applicable oversight statutes, the Montana Department of Insurance (MDOI) conducted a Market Conduct Examination of BCBSMT in which it reviewed the insurer's business practices between July 1, 2006, and December 31, 2010. In February 2014, the Montana State Auditor issued an Order fining BCBSMT $250,000 for numerous discrepancies, including improper medical premium billing in violation of Unfair Trade Practices §§ 33-18-208 and -212, MCA. Caring did not challenge or appeal the fine and paid it within the required 30-day payment period.

¶5 In April 2014, Ibsen filed a "Complaint Putative Class Action" against Caring and Health Care. An amended complaint was filed shortly thereafter. Ibsen alleged that from 2007 through 2012, BCBSMT violated § 33-18-212, MCA, by improperly charging consumers padded premiums that included undisclosed amounts exceeding the medical premium. It claimed that BCBSMT used the overcharges to provide kickbacks to the Chamber of Commerce, the organization that marketed BCBSMT's insurance plan to its members. It further argued that these kickbacks were given to ensure that BCBSMT

4

remained as a "Chamber Choice" provider and thus were in violation of § 33-18-208, MCA.

¶6    In addition to asserting class allegations, the amended complaint set forth the following four counts:

*Count I* - Breach of Fiduciary Duty:

Ibsen claimed that Caring and Health Care owed it and the putative class fiduciary duties under the UTPA that it breached by "collecting excessive and/or improper medical premiums and by paying rebates in violation of the Montana Insurance Code [MIC]." Ibsen asserted that it and the class were injured by these breaches and were entitled to appropriate relief.

*Count II* – Unfair/Deceptive Trade Practices/Violation of Insurance Billing Statutes:

Ibsen maintained that BCBSMT violated §§ 33-18-208 and -212, MCA, by charging and collecting improper and excessive medical premiums from it and the class and by paying kickbacks. It claimed that BCBSMT's conduct was an unfair and/or deceptive trade practice under Title 33. Ibsen sought appropriate relief, treble damages, and reasonable attorney's fees.

*Count III* – Breach of Contract:

Ibsen alleged that it and the class entered into written insurance contracts with BCBSMT and that these contracts "impliedly" contained all sections of the Montana Insurance Code, including §§ 33-18-208 and -212, MCA. Ibsen asserted that under the contracts, BCBSMT "implied and covenanted that it would act in good faith and follow the law and the contracts with respect to its billing practices."

5

*Count IV* – Unjust Enrichment:

Lastly, Ibsen declared that BCBSMT's collection of premiums and fees beyond those authorized by applicable law and the payment of rebates to secure business for itself were violations of the MIC and constituted unjust enrichment. It requested that BCBSMT be disgorged of all excessive premiums collected and that those funds be returned to the class members.

¶7 Caring promptly filed a Notice of Removal from the First Judicial District Court to the United States District Court for Montana. Caring asserted that Ibsen's claim fell within the scope of § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) and consequently should be decided in federal court. Ibsen countered with a motion to remand to District Court arguing that its complaint raised state law claims similar to those adjudicated in the federal decision, *Fossen v. Blue Cross & Blue Shield of Mont.*, 660 F.3d 1102 (9th Cir. 2011), in which the court held that almost-identical state claims were not completely preempted by federal law. Without legal analysis or ruling on other pending motions, in June 2014, the federal court granted Ibsen's motion and remanded the case to the District Court.

¶8 In rendering its March 2015 ruling on the motions to dismiss and for summary judgment, the District Court held that the legislature did not provide private citizens with the right to bring a cause of action to enforce §§ 33-18-208 and -212, MCA. The court noted that § 33-18-242, MCA, offers the sole statutory exception to the Commissioner's exclusive authority to enforce the UTPA by allowing "insureds" to assert claims involving "claims handling or settlement practices." The District Court reasoned that

because Ibsen was not an insured nor was it asserting a cause of action based upon claims handling or settlement practices, § 33-18-242, MCA, has no application.

¶9 Ibsen asserted that three of its four claims were common law claims rather than statutory claims brought under the UTPA. The District Court disagreed. The court pointed out that "Count II clearly alleges a statutory violation and purports to allow [Ibsen] to enforce the two provisions of the insurance code ([S]ections -208 and -212)." It therefore held that "Count II . . . is strictly and explicitly a statutory claim [and] is not allowed to be brought by private claimants." The District Court also invoked Ibsen's assertions in the federal court proceeding that its "several causes of action" were "all based on violations of the two insurance code sections." Consequently, the District Court held that each remaining count set forth in the Complaint was not a common law claim. Citing § 33-1-311(1), MCA, the "General powers and duties" section of the MIC, the court found that the clear intent of the legislature is that the insurance code is to be enforced by the insurance commissioner and not private litigants, with exceptions not applicable to this case.

¶10 Ibsen filed a timely appeal. The Montana Commissioner of Insurance (Commissioner) and the Montana Trial Lawyers Association (MTLA) have filed amicus briefs in support of Ibsen.

**STANDARD OF REVIEW**

¶11 We review a district court's summary judgment ruling de novo, applying the same rule, M. R. Civ. P. 56(c)(3), that a district court does when ruling on summary judgment. Summary judgment "should be rendered if the pleadings, the discovery and disclosure

7

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3); *Victory Ins. Co. v. Mont. State Fund*, 2015 MT 82, ¶ 10, 378 Mont. 388, 344 P.3d 977 (internal citations omitted).

¶12 We review a district court's ruling on a motion to dismiss under the standards set forth in M. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. A district court's determination that a complaint has failed to state a claim for which relief can be granted is a conclusion of law which we review for correctness. *Victory Ins. Co*, ¶ 11.

## DISCUSSION

¶13 *May Ibsen maintain a private right of action for violation of §§ 33-18-208 and -212, MCA, of the UTPA, or, in the alternative, can Ibsen's claims be sustained as common law claims?*

¶14 We first set forth the statutory provisions we reference throughout this Opinion.

¶15 Section 33-1-311(1), MCA, provides:

> The commissioner shall enforce the applicable provisions of the laws of this state and shall execute the duties imposed on the commissioner by the laws of this state.

¶16 Section 33-18-201, MCA (Section 201), provides in relevant part:

> A person may not, with such frequency as to indicate a general business practice, do any of the following:
> (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;
>
> .   .   .
>
> (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;

(5) fail to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

. . .

(9) attempt to settle claims on the basis of an application that was altered without notice to or knowledge or consent of the insured;

. . .

(13) fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage . . . .

¶17     Section 33-18-208, MCA (Section 208), provides:

Except as otherwise expressly provided by law, no person shall knowingly:

. . .

(2) pay or allow or give or offer to pay, allow, or give, directly or indirectly, as inducement to such insurance or annuity any rebate of premiums payable on the contract or any special favor or advantage in the dividends or other benefits thereon or any paid employment or contract for services of any kind or any valuable consideration or inducement whatever not specified in the contract;

(3) directly or indirectly give or sell or purchase or offer or agree to give, sell, purchase, or allow as inducement to such insurance or annuity or in connection therewith and whether or not to be specified in the policy or contract, any agreement of any form or nature promising returns and profits or any stocks, bonds, or other securities or interest present or contingent therein or as measured thereby of any insurance company or other corporation, association, or partnership or any dividends or profits accrued or to accrue thereon . . . .

¶18     Section 33-18-212, MCA (Section 212), provides:

. . .

(2) A person may not willfully collect as a premium or charge for insurance any sum in excess of or less than the premium or charge applicable to the insurance and, as specified in the policy, in accordance with the applicable classifications and rates filed with or approved by the commissioner . . . .

9

¶19    Section 33-18-242, MCA (Section 242), provides:

> (1) An insured or a third-party claimant has an independent cause of action
>     against an insurer for actual damages caused by the insurer's violation
>     of subsection (1), (4), (5), (6), (9), or (13) of 33-18-201.
>
> .   .   .
>
> (3) An insured who has suffered damages as a result of the handling of an
>     insurance claim may bring an action against the insurer for breach of the
>     insurance contract, for fraud, or pursuant to this section, but not under
>     any other theory or cause of action.  An insured may not bring an action
>     for bad faith in connection with the handling of an insurance claim.

¶20    Ibsen maintains it has the right to bring both common law and statutory claims against Caring and Health Care for violation of specific provisions of the UTPA. The defendants counter that the UTPA precludes private rights of action for claims arising from the UTPA provisions relied upon by Ibsen.

¶21    We deem it appropriate to briefly review the history of the UTPA. In 1959, the Montana legislature enacted the Montana Insurance Code (MIC), codified at Title 40, R.C.M.1947. The legislation was derived from the Model Act drafted by the National Association of Insurance Commissioners (NAIC). The MIC, subsequently renumbered, spans forty chapters in Title 33 of the MCA, and governs numerous facets of the relationship between and among insurers, insurance companies, insurance consumers, and others. The UTPA constitutes one chapter of the MIC and is codified at Chapter 18 of Title 33, §§ 33-18-101 through 33-18-1006, MCA. Its purpose is to regulate trade practices in the business of insurance by defining and prohibiting practices constituting unfair acts or methods of competition. Section 33-18-101, MCA. While the UTPA regulates the relationship among an insured, a claimant, and an insurer, it also provides broader governance by, among other things:  (1) restricting the relationship between

10

insurers and mortuaries, §33-18-301, MCA; (2) penalizing insurer political contributions, § 33-18-305, MCA; (3) regulating how credit information for personal insurance may be used, § 33-18-605, MCA; and (4) prohibiting insurer discrimination on the basis of genetic traits, § 33-18-903, MCA. Notably, under the original UTPA, the Commissioner was solely responsible for enforcement of the entire UTPA and no express private right of action was codified in the Act.

¶22 In 1977, the legislature adopted amendments to the law that provided the Commissioner with greater regulatory authority. In 1980, NAIC issued a report in which it expressly stated, "the intent of the NAIC, as evidenced by the language of the [Act] and the NAIC Proceedings, and supplemented by this Report, was clearly not to create a new private right of action for trade practices which are prohibited by the Model Act." 2 NAIC Proc. 344, 350 (1980). At that time, the Montana legislature did not incorporate into Montana's UTPA any provision precluding private rights of action or referencing the NAIC's 1980 report.

¶23 The first Montana case to reference the "Unfair Trade Practices Section of the Montana Insurance Code" was *Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065 (1983) (overruled in part on other grounds and superseded in part by § 33-18-242, MCA). *Klaudt* presented a case of first impression to this Court: Does the Unfair Trade Practices Section of the MIC, specifically § 33-18-201(6), MCA, confer a private right of action against an insurer by a third-party claimant? In *Klaudt*, 18-year-old Klaudt died of injuries sustained in a high-speed automobile accident. Klaudt was a passenger in a vehicle driven by Calvin Flink, who was intoxicated at the time. Flink admitted fault for

the accident and pleaded guilty to reckless driving. Flink's insurer, State Farm, refused to negotiate with the Klaudts and denied liability. Klaudt's parents sued Flink and State Farm alleging that State Farm breached its duty under the UTPA to fairly negotiate and settle claims. The district court granted State Farm's motion to dismiss on the grounds that the Klaudts did not have standing. Klaudts appealed. *Klaudt*, 202 Mont. at 249, 658 P.2d at 1066.

¶24 To determine whether the insurer's duty to settle claims under § 33-18-201(6), MCA, ran to a third-party in addition to the insured, we reviewed cases from other jurisdictions with similar statutes and discovered a split of authority on the issue. We then set forth the four-prong test we subsequently applied in *Wombold v. Assocs. Fin. Servs. Co. of Mont., Inc.*, 2004 MT 397, 325 Mont 290, 104 P.3d 1080. *Klaudt*, 202 Mont. at 250-51, 658 P.2d at 1066-67. After applying the test, the Court held that Section 201(6), conferred a duty on insurers and claims adjusters covered by the unfair trade practices section to settle claims with insureds and third-party claimants promptly, fairly, and in good faith, and held that a civil action could be maintained for failure to do so. *Klaudt*, 202 Mont. at 252, 658 P.2d at 1067.

¶25 Following *Klaudt*, the 1987 Montana Legislature enacted § 33-18-242, MCA. Section 242(1) expressly grants an insured or a third-party claimant a right to bring an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsections (1), (4)-(6), (9), and (13) of § 33-18-201, MCA**.** These subsections, set forth above at ¶ 16, prohibit unfair claim handling and settlement practices.

¶26 The legislative history indicates that the Legislature intended to limit the expansion of private causes of action following *Klaudt*. On January 27, 1987, Representative Fred Thomas sponsored House Bill 240, a bill drafted to revise the law on insurance bad faith claims. He stated:

> These are claims against insurers arising out of unfair claims settlement practices, which is essentially an administrative remedy that has been on the books for many years. The Supreme Court has expanded the administrative remedy into a court created right of action called the Tort of Insurance Bad Faith. Based on [*Klaudt*], the [C]ourt not only allows insureds to sue their own insurer for the Tort of Insurance Bad Faith but also allows an injured third party to sue the wrong doer's insurance company. Montana is one of a handful of liberal right of action states. The right of action has also substantially increased premiums to businesses and individuals across the state. Availability, affordability and fairness are the issues of this bill. Our [C]ourt has swung the pendulum so far in favor of the trial lawyers that it has stacked the deck against insurers, as a result, all of us pay. This bill swings the pendulum back towards the middle. It limits the action where an insurer should be held accountable for an injury it causes to a person through highly improper conduct. This bill also encourages alternative dispute resolution; this should cut down on court congestion and unnecessary litigation processes. [The bill] moves us toward the original intent of the Unfair Claims Settlement Practices Act but courts will still be able to hear those insurance bad faith actions that in the past have given insurance companies such a black eye.

¶27 The legislative history also contains written proposed amendments to HB 240 as well as a transcript of discussions about the bill by proponents and opponents. Then-Commissioner of Insurance Andrea Bennett supported the original bill in which Section 242 granted but limited private rights of action.

¶28 Opponents to the bill complained that it was too limiting and did not allow for private rights of action for all fourteen unfair claim settlement practices identified in Section 201. In fact, the original HB 240 contained a statement that Section 242 was to

13

apply to all provisions in Title 33, chapter 18, part 2, "Insurer's Relations with Insured and Claimant." However, the Commissioner urged deletion of this statement and it was deleted from the bill; thus, only a violation of the enumerated sections set forth in Section 242(1) are actionable.

¶29 At present, Section 242 allows an insured or third-party claimant to bring an independent cause of action against an insurer for actual damages caused by the insurer's violation of the six enumerated subsections of § 33-18-201, MCA. Caring and Health Care argue that Section 242 is the only provision of the UTPA that affords a private right of action, and that it does not supply any authority for the claims made by Ibsen. First, Caring and Health Care point out that Ibsen is neither an insured nor a third-party claimant; thus, it has no standing to invoke the provisions of Section 242. Second, they note that Section 242 does not in any event permit a private right of action by any person for claims arising either from the unlawful extension of rebates (Section 208) or the illegal dealing in premiums (Section 212).

¶30 Ibsen counters that Section 242 merely codified *Klaudt's* common-law-recognized private right of action for an insurer's violation of claims handling practices because "claims handling practices" was the only issue with which the legislators were concerned in 1987. Ibsen argues that Section 242 does not preclude private rights of action generally or for other claimed violations of the UTPA, nor does it preclude common law claims based upon statutorily-prohibited conduct.

¶31 We have addressed previously whether an individual claimant has the right to bring a private action to enforce a statute that primarily was intended to be regulated by a

14

governing agency. In *Wombold*, we were asked to determine whether the Consumer Loan Act (CLA) created or implied a private right of action to enforce the provisions of the statute. Wombolds brought an action against Associates Financial Services Company (AFS), a licensed lender under the CLA, alleging that AFS employed illegal lending practices in its real estate-secured loans with the Wombolds. *Wombold*, ¶ 1. AFS argued that the Department of Administration (DOA), the enforcement agency over the CLA, was "the sole entity authorized to seek a remedy for violations of the act in the Courts." *Wombold*, ¶ 33. The district court disagreed and granted Wombolds' motion for partial summary judgment holding that the CLA afforded a private right of action. *Wombold*, ¶ 2. AFS appealed.

¶32   In our review, we first noted that the CLA did not expressly authorize a private right of action, nor did the legislative history indicate an intent to expressly grant or deny such a right. *Wombold*, ¶ 34. We then considered the following factors to determine if the statute implied such a right: (1) is the interpretation [allowing a private right of action] consistent with the statute as a whole; (2) does the interpretation reflect the intent of the legislature considering the statute's plain language; (3) is the interpretation reasonable so as to avoid absurd results; and (4) has the agency charged with the administration of the statute placed a construction on the statute. *Wombold*, ¶ 35. (As noted in ¶ 24, this is the same test we applied in *Klaudt*.)

¶33   We determined that the CLA had the beneficent purpose to regulate consumer lenders and protect borrowers; it should therefore be construed liberally. *Wombold*, ¶ 36. We observed that the statute granted certain rights to borrowers regarding the structure of

15

their loans and that those rights would be meaningless if the borrowers could not enforce them. *Wombold*, ¶ 37. We attributed the presence of an attorney fee provision in the law as confirmation of legislative intent to grant a private right of action. *Wombold*, ¶ 42. We also concluded that implying a private right of action would not lead to absurd results. *Wombold*, ¶ 45. Lastly, in holding that a *limited* private right of action was implied under the CLA, we acknowledged that the DOA had issued no statement addressing this issue; therefore, we considered the Montana Attorney General's interpretation of the statute to include a private right of action. *Wombold*, ¶ 46. Based upon this analysis, we determined that the CLA did not prohibit Wombolds' private cause of action. *Wombold*, ¶ 47.

¶34 We revisited this analysis in *Faust v. Util. Solutions, LLC*, 2007 MT 326, 340 Mont. 183, 173 P.3d 1183, when we were asked to determine whether the Montana Water Use Act (WUA) created a private right of action. *Faust*, ¶ 4. Faust owned real property and water rights in Gallatin County at the time of this suit. *Faust*, ¶ 5. Utility Solutions operated a water and wastewater system to service private developments, and while awaiting appropriate permits began pumping groundwater before final regulatory approval had been granted. *Faust*, ¶ 6. Faust, arguing his water rights would be adversely affected by Utility's groundwater appropriations and violation of the WUA, sought injunctive relief and civil penalties. *Faust*, ¶¶ 7 and 8. The district court granted Utility's motion to dismiss holding that Faust lacked standing to sue under the WUA. *Faust*, ¶ 9.

16

¶35    On appeal, the Court determined that Faust's injunctive relief claim was moot because the Department of Natural Resources and Conservation (DNRC), the permitting and regulatory agency, had issued the final permit to Utility and the company was extracting groundwater legally.   Therefore, we addressed "only whether the [WUA] creates a right of action that allows private citizens to enforce its civil penalty provisions." *Faust*, ¶ 23.   Turning to the express language of the statute, we reviewed, among other provisions, the WUA's "judicial enforcement" provision and observed that it referred only to actions initiated by the DNRC, not by private citizens.  *Faust*, ¶ 25.  As in *Wombold*, we noted the existence of an attorney fee provision but ruled it inapplicable to Faust's claim for civil penalties because it pertained expressly and exclusively to claims for injunctive relief.  *Faust*, ¶ 26.  Additionally, reviewing the statute as a whole, we noted that the fines and penalties that could be imposed by a district court must be deposited into a special fund to finance departmental regulatory enforcement of the Act; thus, the district court was not authorized to award fines and penalties to a private citizen. *Faust*, ¶ 27.  Relying on these findings as well as the legislative history which supported the absence of a private right of action, we affirmed the district court's ruling and concluded that the WUA tasked the DNRC, the attorney general, or the county attorney with enforcing the Act's civil penalty provisions, but it conferred no such right upon a private citizen. *Faust*, ¶¶ 30-31.

¶36    Turning back to the UTPA, the United States District Court for Montana concluded that the UTPA did not create or imply a private right of action to enforce §§ 33-18-204 and -212, MCA, in *Shupak v. New York Life Ins. Co.*, 780 F. Supp. 1328,

1338 (D. Mont. 1991). Ibsen acknowledges this but argues that *Shupak* is not controlling and has been contradicted by several subsequent Montana Supreme Court cases. Relying on *O'Fallon v. Farmers Ins. Exch.*, 260 Mont. 233, 859 P. 2d 1008 (1993), *Thomas v. Northwestern Nat'l Ins. Co.*, 292 Mont. 357, 973 P.2d 804 (1998), and *Williams v. Union Fid. Life Ins. Co.*, 2005 MT 273, 329 Mont. 158, 123 P.3d 213, Ibsen maintains it is entitled to bring common law tort claims based upon insurer conduct that is not expressly listed in § 33-18-201, MCA.

¶37    In *O'Fallon*, O'Fallon was injured in an automobile accident caused by an insured of Farmers. *O'Fallon*, 260 Mont. at 235, 859 P. 2d at 1009. O'Fallon brought an action to recover damages for Farmers' violation of § 33-18-201(4) and (6), MCA (refusal to investigate, pay claims, and settle in good faith). The district court dismissed O'Fallon's complaint and he appealed. *O'Fallon*, 260 Mont. at 236, 859 P. 2d at 1010. This Court reversed the district court, determining that O'Fallon was a "third-party claimant" under the UTPA, and therefore his Sections 201 and 242 statutory claims were not barred. *O'Fallon*, 260 Mont. at 242, 859 P. 2d at 1013. The claims asserted in *O'Fallon* were clearly statutory claims expressly permitted under Section 242; they were not common law tort claims.

¶38    In *Thomas*, the Thomases, plumbing and heating contractors, submitted a claim to Northwestern Insurance, their CGL insurer, arising out of damages to a client's property resulting from a spill that occurred during an installation. The insurer denied the claim based upon a modified "total pollution exclusion" that had been added to Thomases' renewal policy but had not been pointed out by the insurer. *Thomas*, ¶¶ 7-8. Thomases

claimed that the insurer failed to provide adequate notice of the revised and more-restrictive exclusion provision, was negligent, and breached its fiduciary duty as well as its duty of good faith and fair dealing. *Thomas*, ¶ 11. The insurer asserted that Section 242 precluded Thomases from seeking recovery under their common law theories. *Thomas*, ¶ 12. The district court agreed and granted the insurer's motion for summary judgment. *Thomas*, ¶ 13. We reversed, holding that Section 242 did not preclude common law claims for insurer misconduct pertaining to contract renewal. *Thomas*, ¶ 37. Notably, we observed that the provisions of § 33-18-201, MCA, did not address the conduct which was the subject matter of the tort claims (*Thomas*, ¶ 34), and that appellants "allege pure common law claims without adding violations of the UTPA." *Thomas*, ¶ 36. This case is distinguishable from the case at hand because the Thomases' common law claims fell completely outside of the UTPA, and were not premised upon any violation of the Act.

¶39 Similarly, in *Williams*, the insured filed a civil action against Union alleging breach of contract, fraud, breach of implied covenant of good faith and fair dealing, and breach of Union's statutory obligations under the MIC and the Unfair Claim Settlement Practices Act. *Williams*, ¶ 13. Following a jury ruling that Union did not breach its contract, Williams appealed and Union cross-appealed. *Williams*, ¶ 16. On cross-appeal, Union claimed that Williams' fraud and bad faith claims were barred under Section 242. *Williams*, ¶ 54.

¶40 In arguing that her common law claims were not barred, Williams observed that while the legislature prohibited post-claim underwriting in § 33-18-215, MCA, she was

not asserting that the post-claim underwriting violation could form the basis of an independent claim; rather, she claimed that the statutory violation was relevant to her claims of bad faith, fraud, and malice, as well as to her claim for breach of contract. *Williams*, ¶ 30. She further maintained that her common law actions were premised upon conduct that occurred prior to the application phase of the insurance transaction (which by definition would have preceded any claims handling or settlement practices that are the subject of Sections 201 and 242), and thus her claims were not governed or barred by Section 242. *Williams*, ¶ 55. Without discussion, we agreed that Section 242 did not govern. We then affirmed the district court on the grounds that Union had failed to satisfy its summary judgment burden. *Williams*, ¶ 58.

¶41 As the foregoing cases establish, purely common law causes of action based upon insurer misconduct are not precluded. However, there is a distinction between pursuing damages for violation of a statute, and pursuing an independent common law cause of action. As addressed further below, Ibsen, the plaintiff here, seeks to privately enforce a regulatory statute so as to recover damages. In *Thomas* and *Williams*, by contrast, the plaintiffs were pursuing common law claims, and not claims that were predicated upon a statutory violation. While Williams referenced a statutory violation as evidentiary support for her common law claims, she affirmatively stated she was not seeking to enforce the statute as a basis for the recovery of damages. The distinction is not semantical. A party may always allege and recover damages in a common law cause of action upon proof of a common law claim, but a party is not entitled to obtain private

enforcement of a regulatory statute that is not intended by the legislature to be enforceable by private parties.

¶42 We now return to Ibsen's Complaint. Ibsen acknowledges that Count II is premised expressly upon violation of Sections 208 and 212 of the UTPA, but asserts that the remaining three counts for breach of contract, breach of fiduciary duty, and unjust enrichment are common law claims. We disagree. It is clear from the contents of the Complaint as well as the express representations made by Ibsen in the federal proceeding that Ibsen is seeking private enforcement of the foregoing provisions on behalf of the class. Its breach of fiduciary duty count is premised upon the unlawful collection of excessive medical premiums and the payment of rebates "in violation of the Montana Insurance Code." Its unjust enrichment count seeks disgorgement of the illegal or excessive premiums and rebates "in violation of the Montana Insurance Code." It is not possible to conduct an informed analysis of Ibsen's breach of contract claim because Ibsen does not identify a particular contract that was breached; it simply asserts that all of the parties entered into written insurance contracts and impliedly incorporated all sections of the Montana Insurance Code into those various contracts. Again, however, this count relies upon incorporation of the MIC. These are not purely common law causes of action.

¶43 We are mindful that premising the class complaint upon a violation of the insurance code that has already been established and sanctioned by the Insurance Commissioner would pave a clear path to recovery on behalf of the class. If the UTPA allowed a private right of action for rate discrimination and premium overcharges, we

would not hesitate to reverse the decision of the District Court. However, we conclude that the UTPA does not expressly or impliedly create a private right of action for violation of Sections 208 and 212.

¶44 Our conclusion here finds support in *Fossen v. Caring for Montanans, Inc.*, 993 F. Supp. 2d 1254 (D. Mont. 2014), and *Fossen v. Caring for Montanans, Inc.*, 617 Fed. Appx. 737 (9th Cir. 2015). While we are not bound by the decisions of the U. S. District Court of Montana or the Ninth Circuit Court of Appeals, when federal courts have ruled on issues substantially similar to those before us, it is proper for us to review their opinions for guidance. *Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 2008 MT 460, ¶ 162, 348 Mont. 80, 201 P.3d 8.

¶45 In *Fossen*, the Fossens brought a breach of contract claim against Caring for Montanans alleging that Caring had unfairly discriminated against them by charging a higher premium rate in violation of UTPA provision § 33-18-206(2), MCA. The U. S. District Court for the District of Montana analyzed the UTPA in detail to determine whether the statutes expressly or impliedly created a private right of action. *Fossen*, 993 F. Supp. 2d at 1258-1260. The court concluded that § 33-18-242, MCA, was the sole provision in the UTPA granting to insureds and third-party claimants[1] private rights of action arising from certain specified claims handling and settlement practices identified in § 33-18-201, MCA, but for no other purpose. *Fossen*, 993 F. Supp. 2d at 1260. As the

---

[1] The District Court determined that Ibsen was neither an insured nor a third-party claimant under the UTPA and Ibsen did not dispute this initially. Ibsen now claims that it was an "insured employer." As our disposition of this case does not require resolution of Ibsen's status nor what benefits such a status commands, we do not disturb the District Court's ruling.

Fossens' claims rested upon rate discrimination in violation of § 33-18-206(2), MCA, and not the insurer's claims handling practices, Fossens had no right to bring an action under the UTPA. *Fossen*, 993 F. Supp. 2d at 1264.

¶46   The U. S. District Court addressed Fossens' reliance on *State ex rel. Larson v. Dist. Court*, 149 Mont. 131, 423 P.2d 598 (1967) and *First Sec. Bank v. Goddard*, 181 Mont. 407, 593 P.2d 1040 (1979) by noting that both of these cases were claims handling breach of contract cases decided before the enactment of Section 242, and they did not support Fossens' claims. The court held that there "is no common law or statutory private right of action pertaining to . . . claims of rate discrimination in violation of subsection 206 of the UTPA." *Fossen*, 993 F. Supp. 2d at 1263. Subsequently, the Ninth Circuit Court of Appeals affirmed the U. S. District Court decision. *Fossen*, 617 Fed. Appx. at 739. The Ninth Circuit observed that since the 1987 legislative amendments, "the Montana Supreme Court has never recognized a private right of action for the violation of a UTPA provision other than those provisions identified in § 33-18-242(1)." *Fossen*, 617 Fed. Appx. at 739.

¶47   Finally, our conclusion here is buttressed by application of the four-part test we applied in *Klaudt* and *Wombold* to determine whether a statutory scheme implies a private right of action. (See ¶¶ 24 and 32 herein). The first prong of the test is whether the interpretation allowing a private right of action is consistent with the statute as a whole. *Wombold*, ¶ 35. Ibsen's interpretation fails this component of the test for two reasons. First, the statute contains an express "Enforcement" section at §§ 33-18-1001 through -1006, MCA. These provisions charge the Commissioner with the enforcement

23

of the UTPA, and provide it with the authority to investigate alleged violations of the Code, conduct hearings, impose fines, and issue cease and desist orders. Second, Section 242 expressly grants insureds and third-party claimants, "an independent cause of action against an insurer" for the insurer's violation of discrete provisions of § 33-18-201, MCA. Section 242 provides the narrow exception to the rule that it is the Commissioner who will enforce the UTPA. Thus, an interpretation allowing a private right of action for violation of Sections 208 and 212 is inconsistent with the statute as a whole.

¶48 The second prong of the test is whether the interpretation allowing for a private right of action reflects the intent of the legislature considering the statute's plain language. *Wombold*, ¶ 35. Our discussion above at ¶¶ 25-27 establishes that the legislature did intend to limit the expansion of private causes of action when it enacted Section 242. The third prong of the test is whether the interpretation urged by Ibsen is reasonable so as to avoid absurd results. *Wombold*, ¶ 35. We conclude, premised upon the foregoing statutory and case history, that expanding the private right of action as Ibsen urges is neither reasonable nor required to avoid absurd results.

¶49 Lastly, we turn to the final prong of the test, which is whether the agency charged with the administration of the statute has placed a construction on the statute. *Wombold*, ¶ 35. The Commissioner of Insurance has been involved in the adoption and interpretation of the Montana Insurance Code since its enactment. Then-Commissioner John Holmes attended the January 1959 hearings pertaining to a proposed bill to dramatically revise Montana insurance law. In 1977, counsel for the Commissioner introduced a senate bill to revise the unfair insurance claim settlement and enforcement

24

procedures, giving greater authority to the Commissioner. Subsequently, in 1987, the Commissioner was a consistent participant in the January, February, and March meetings leading to the enactment of Section 242. During these meetings there was lengthy discussion pertaining to the extent of private rights of action to be provided under proposed Section 242. The legislative history clearly states that "an insured or third-party claimant has a separate cause of action against an insurer for *certain* unfair claim settlement practices." (Emphasis added.) Mont. Sen. Business & Industry Comm., Meeting on House Bill 240, 50th Legis., Reg. Sess. (March 9, 1987). As noted above, the sponsor of the bill emphasized that the bill was designed to "swing the pendulum back towards the middle" rather than continuing a trend favoring trial lawyers and disfavoring insurers. Opponents to the bill urged the committee to reject the bill because proposed Section 242 "limit[ed] the kinds of prohibitive acts which give rise to an individual or a private cause of action." The Commissioner supported the bill and actively engaged in discussion and proposed amendments.

¶50 In the Commissioner's amicus brief in the case before us, the Commissioner argues that the Model UTPA contains a provision that explicitly states the Act does not create a private right of action, but the Montana UTPA does not contain such a statement. She acknowledges that if a claimant has a dispute with an insurer based upon the insurer's claims handling or settlement practices, the claimant is expressly authorized to bring a private cause of action under Section 242. She goes on to argue that if a claimant has a dispute with an insurer based upon any type of UTPA misconduct that is unrelated to claims and settlement handling, Section 242 simply does not restrict such claims. We

respectfully decline the present Commissioner's invitation to announce an open-ended private right of action for all violations of the UTPA. Because the Commissioner's understanding of the intent of the statute at the time the statute was enacted comports with the intent of the Legislature when enacting Section 242, we defer to the construction placed on the statute by the Commissioner directly involved with Section 242's passage. We therefore conclude that the UTPA does not imply a private right of action. Rather, it expressly confers enforcement authority upon the Commissioner and narrowly provides a limited private right of action only in Section 242.

¶51 Ibsen and amicus MTLA urge us to consider § 27-1-202, MCA, which states "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." Our decision here does not run afoul of this statute. Ibsen and other members of the class were entitled to pursue common law claims for fraud, deceit, and misrepresentation against these defendants premised upon their actions, and to recover damages for the detriment they suffered as a result.

¶52 As we are affirming the District Court, we need not address the ERISA arguments presented by the parties nor the claims pertaining to Health Care.

**CONCLUSION**

¶53 For the reasons set forth in this Opinion, we conclude Ibsen's private enforcement claims against BCBSMT, Caring for Montana, and Health Care Services Corp. for violations of Sections 208 and 212 of the UTPA are precluded. We therefore affirm the decision of the District Court.

26

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE