FILED

10/27/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0629

DA 19-0629

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 270

ALFRED DESCHAMPS, BAR II ENTERPRISES, L.L.C.,

      Plaintiffs and Appellants,

  v.

FARWEST ROCK, LTD, FARWEST ROCK PRODUCTS,
FARWEST PRODUCTS, LLC, LUNDE BASTON,
MIKE BASTON, and DOES 1-10,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-18-1647
Honorable Elizabeth Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            J.R. Casillas, Jenna P. Lyons, Datsopoulos, MacDonald & Lind, P.C.,
Missoula, Montana

      For Appellees:

            W. John Tietz, Kasey Kimball, Browning, Kaleczyc, Berry
& Hoven, P.C., Helena, Montana

Submitted on Briefs:  September 9, 2020
Decided:  October 27, 2020

Filed:

                    _____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Alfred Deschamps and Bar 11 Enterprises, L.L.C., appeal from an October 25, 2019 Fourth Judicial District Court Order granting the defendants' motion for summary judgment. We affirm.

¶2     We address the following issues on appeal:

*Issue One: Whether the District Court erred in determining Bar 11 Enterprises, L.L.C., lacked standing because six years exceeded a reasonable amount of time to "wind up" its business affairs.*

*Issue Two: Whether the District Court erred in determining that Deschamps lacked standing because he was not a party or third-party beneficiary to the disputed contract.*

*Issue Three: Whether the District Court erred in dismissing Deschamps' tort claims because he was owed no legal duty of care distinct from that arising in contract.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On June 4, 2003, Alfred Deschamps (Deschamps) filed Articles of Organization with the Montana Secretary of State to create Bar 11 Enterprises, L.L.C. (Bar 11), of which he was the only listed member and agent. On April 20, 2006, Deschamps and his wife leased property in Missoula County to Bar 11. That same day, Bar 11 subleased the premises to Farwest Rock, LTD (Farwest LTD) for the purpose of gravel mining and processing. In November of 2009, Farwest LTD, through its President, Mike Baston, applied for and received an opencut mining permit from the Department of Environmental Quality (DEQ). The subsequently amended DEQ permit provided for reclamation efforts by the permit holder after mining was completed.

2

¶4 On June 1, 2011, Bar 11 entered into a Gravel Pit Sublease Agreement (Sublease) with FarWest Rock Products (Farwest Products), a business entity owned by Mike Baston's son, Lunde Baston (Baston). The Sublease provided that Farwest Products would pay monthly royalties to Bar 11 of $0.86 per ton of removed materials for a minimum of 20,000 tons of material per year. Initially, Baston extracted some materials from the property and made royalty payments, some of which were made to Deschamps, rather than Bar 11. However, Baston apparently determined that there was too much clay in the gravel, ceased mining operations by early 2012, and moved most mining equipment off the site by June 2012.

¶5 On December 3, 2012, the Montana Secretary of State's office involuntarily dissolved Bar 11 for failing to file required annual reports. Deschamps was apparently unaware of his company's dissolution until a September 3, 2019 deposition during this litigation. On October 16, 2015, Deschamps, through counsel, sent a Notice of Default to Baston and Farwest Products demanding unpaid royalties for 2013 and 2014. Baston sent Deschamps a Notice of Termination of Lease on October 29, 2015, invoking a provision in the Sublease agreement for termination on the basis of economic unfeasibility.

¶6 On December 10, 2018, Deschamps filed a complaint, listing himself and Bar 11 as plaintiffs, alleging breach of contract and breach of implied covenant of good faith and fair dealing for failure to make the minimum royalty payments. The complaint also alleged negligence and gross negligence for failure to fully remediate the mine site, which caused the property to continue to be taxed as an active mine. Though the complaint listed both Lunde and Mike Baston and their respective companies, Deschamps only served Lunde

3

Baston and his company, Farwest Products. On September 3, 2019, the same day he learned that Bar 11 had been dissolved, Deschamps filed articles of organization with the Secretary of State's office to create a business entity named Bar 11 Enterprises, LLC.

¶7     On October 25, 2019, the District Court granted Baston and Farwest Product's motion for summary judgment, dismissing all claims based on a lack of standing by both Deschamps and Bar 11. The District Court determined that the recently-created Bar 11 company was not the same entity as that which had entered into the 2011 Sublease before being involuntarily dissolved in 2012. The District Court found that the more than six years between Bar 11's dissolution and the commencement of the lawsuit exceeded a reasonable amount of time for the original Bar 11 to "wind up" its business affairs. Furthermore, the District Court concluded that Deschamps did not have standing to sue individually, because he had not been a party to the Sublease in his personal capacity and he was not an intended third-party beneficiary of the agreement. Deschamps appeals.

## STANDARD OF REVIEW

¶8     This Court will review a district court's grant or denial of a motion for summary judgment de novo. *Xin Xu v. McLaughlin Research Inst. for Biomedical Sci., Inc.*, 2005 MT 209, ¶ 18, 328 Mont. 232, 119 P.3d 100. Determinations of standing and interpretation of statute are also reviewed de novo. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 28, 360 Mont. 207, 255 P.3d 80 (citations omitted).

4

**DISCUSSION**

¶9 *Issue One: Whether the District Court erred in determining Bar 11 Enterprises, L.L.C., lacked standing because six years exceeded a reasonable amount of time to "wind up" its business affairs.*

¶10 Deschamps argues that the District Court erred in granting summary judgment based upon the determination that Bar 11 and Deschamps did not have standing to bring suit against Farwest Products. A party moving for summary judgment must show an absence of a genuine issue of material fact as well as an entitlement to judgment as a matter of law. M. R. Civ. P. 56(c); *McLeod v. State ex rel. Dep't of Transp.*, 2009 MT 130, ¶ 12, 350 Mont. 285, 206 P.3d 956.

¶11 Through the Sublease agreement, Bar 11 entered into a contract with Farwest Products in 2011. Bar 11 was subsequently dissolved in 2012 but then named as a plaintiff in this suit, filed in 2019. Deschamps argues that the 2019 suit was part of the statutorily-permitted "winding up" of Bar 11's business affairs. Alternatively, Deschamps argues that Bar 11 regained active status when he filed articles of organization for a business entity of that same name in September 2019.

¶12 Section 35-8-903(2), MCA, provides that a dissolved limited liability company may bring suit as part of the "winding up" of its business affairs. It does not specify how long this "winding up" period may continue. The District Court looked to caselaw from other jurisdictions with similar statutory structures as well as § 35-8-912, MCA, which allows involuntarily-dissolved limited liability companies five years to seek reinstatement, and concluded that more than five years exceeded a reasonable amount of time to complete the "winding up" process.

5

¶13    Deschamps argues that the District Court improperly supplanted legislative intent with its own by imposing a five-year restriction on the "winding up" process. Deschamps is correct that the judiciary's role "is simply to ascertain and declare what is in terms or in substance contained therein, [and] not to insert what has been omitted or to omit what has been inserted." *Larson v. State*, 2019 MT 28, ¶ 28, 394 Mont. 167, 434 P.3d 241 (quoting § 1-2-101, MCA; alteration in original). However, the Legislature's decision not to provide a time measurement for the "winding up" period does not necessarily mean that it was intended to be one of infinity, which would condemn the specters of long-dissolved business entities to linger on eternally. *See Flint Cold Storage v. Dep't of Treasury*, 776 N.W.2d 387, 395 (Mich. Ct. App. 2009) (concluding that the statutorily-undefined "winding up" period for a dissolved corporation was limited to a "reasonable time"); *see also Walters v. Getter*, 232 Mont. 196, 200, 755 P.2d 574, 576 (1988) (noting, in a contract dispute, that where "no time is specified for the performance of an act required to be performed, a reasonable time is allowed." (quotations omitted)). We strive to interpret statutory provisions in a manner consistent with the statutory framework as a whole. *See Mark Ibsen, Inc. v. Caring for Montanans, Inc.*, 2016 MT 111, ¶ 47, 383 Mont. 346, 371 P.3d 446 (citation omitted). Here, the statutory framework provides five years in which administratively dissolved LLCs may seek reinstatement, § 35-8-912, MCA, and convinces us that the Legislature intended to impose finality upon such organizations, such that the "winding up" process should be similarly limited in duration. The District Court did not err in concluding that more than five years exceeded a reasonable amount of time to complete Bar 11's "winding up" period.

6

¶14 Deschamps contends that determining the reasonableness of the time leading up to his suit is a factual question that should have gone to a jury. He argues on appeal that he would have shown that the delay was reasonable by providing evidence at trial that the Appellees intentionally stalled Deschamps' efforts to bring suit with false promises to perform. However, "[w]hat constitutes a reasonable time for a dissolved corporation to wind up its affairs before ceasing to exist altogether is generally a question of law for the court." 16A Fletcher Cyclopedia of Corporations *Expiration of Time Period* § 8173 (2011). We see no reason why this general rule should apply any less to a limited liability company than to a corporation.

¶15 Deschamps also argues that Bar 11 was reinstated when he created a business entity bearing that same name during litigation. Section 35-8-912, MCA, provides a process for reinstating administratively dissolved limited liability companies within five years of dissolution. Deschamps created the new entity more than six years after dissolution of the original company bearing the same name and does not claim to have followed the other procedural requirements of § 35-8-912, MCA. The District Court correctly concluded that Deschamps had simply created a new business entity of the same name, rather than reviving the original organization that was a party to the contract with Farwest Products in 2011. The District Court did not err in finding that the original Bar 11 had ceased to exist after a reasonable time for "winding up" had passed and that the new entity was not a party to the Sublease and therefore lacked standing.

¶16 *Issue Two: Whether the District Court erred in determining that Deschamps lacked standing because he was not a party or third-party beneficiary to the disputed contract.*

¶17 Deschamps also argues that the District Court erred in concluding that he lacked standing to sue in his personal capacity. Deschamps was not a party to the contract with Farwest Products personally; his signature appears on the Sublease only in his capacity as an agent of his then-existing company, Bar 11. Deschamps argues that, as the owner of Bar 11 and the subleased property, he has standing to sue as an intended third-party beneficiary to the contractual provisions of the Sublease.

¶18 Our caselaw makes clear that simply expecting to benefit from the performance of a contract does not grant a non-party the intended third-party beneficiary status necessary to enforce a contract. *Diaz v. Blue Cross & Blue Shield*, 2011 MT 322, ¶¶ 18-19, 363 Mont. 151 267 P.3d 756. This Court has adopted the Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981), under which a third-party right of enforcement exists where "appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Turner v. Wells Fargo Bank*, 2012 MT 213, ¶¶ 17-18, 366 Mont. 285, 291 P.3d 1082 ("A plaintiff cannot merely assume that he is an intended third-party beneficiary to a contract; rather 'he must show from the face of the contract that it was intended to benefit him.'" (quoting *Kurtzenacker v. Davis Surveying, Inc.*, 2012 MT 105, ¶ 20, 365 Mont. 71, 278 P.3d 1002)); *Diaz*, ¶ 18. This Court has generally been reluctant to find that third parties are intended beneficiaries with a right of enforcement. *See, e.g., Williamson v. Mont. PSC*, 2012 MT 32, ¶ 40, 364 Mont. 128, 272 P.3d 71 (holding that individuals did

8

not have standing to bring complaint against entity providing city street lighting); *Diaz*, ¶¶ 23-24 (concluding that insured individuals did not have standing to sue state contractor administering the state's employee healthcare benefit plan); *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶¶ 48-50, 353 Mont. 534, 221 P.3d 675 (finding no third-party enforcement rights where language of the contract precluded third-party beneficiary claims); *but see Harman v. MIA Serv. Contracts*, 260 Mont. 67, 73, 858 P.2d 19, 23 (1993) (concluding that purchaser of a service contract had standing against the insurer's contractor which had assumed exclusive authority to adjust claims on behalf of the insurer).

¶19    Deschamps argues that he created Bar 11 for liability purposes only and, as its sole member, was clearly intended to benefit from the contract. He further notes that some payments under the contract were made directly to him, rather than to Bar 11. The fact that Deschamps sometimes received direct payments, alone, is insufficient to establish his status as an intended third-party beneficiary of the contract. Neither does his status as the sole member of Bar 11 automatically designate Deschamps as an intended third-party beneficiary to all of Bar 11's contracts. Deschamps willingly relinquished his right to personally enforce contracts when he chose to enjoy the liability benefits of conducting business through a limited liability company created by Montana law.

¶20    Deschamps points to no language on the face of the contract itself designating him as an intended third-party beneficiary. Furthermore, his argument that the Sublease was subsequently orally modified to make payments directly to Deschamps, rather than Bar

9

11—ostensibly making him an intended third-party beneficiary—was not raised below[1] and therefore is not properly before this Court. *See Nelson v. Davis*, 2018 MT 113, ¶ 13, 391 Mont. 280, 417 P.3d 333 ("It is well established that we will not address an issue raised for the first time on appeal.").

¶21 *Issue Three: Whether the District Court erred in dismissing Deschamps' tort claims because he was owed no legal duty of care distinct from that arising in contract.*

¶22 Deschamps argues that the District Court erred in dismissing his claims of negligence and gross negligence. While he is correct that the law does not require privity of contract to bring these tort claims, he fails to demonstrate how Baston and Farwest Products owed him a duty of care grounded in tort law rather than the contractual terms of the Sublease agreement. Deschamps argues that it was foreseeable that he would be at risk in relying on Farwest Products to perform its contractual obligations and that failure to do so would injure Deschamps' "economic expectancies" in the form of royalty payments and proper reclamation of the mining site to minimize tax exposure. These are contractual claims, not independent negligence causes of action. "[W]here there is no duty except such as the contract creates, the plaintiff's remedy is for breach of contract." *Garden City Floral Co. v. Hunt*, 126 Mont. 537, 543, 255 P.2d 352, 356 (1953) (holding that a valid tort claim requires "some breach of duty distinct from breach of contract." (quotation omitted)); *see also Dewey v. Stringer*, 2014 MT 136, ¶ 8, 375 Mont. 176, 325 P.3d 1236. The only

---

[1] Deschamps argues that he preserved this issue below when he asserted before the District Court that he owned the property that was the subject of the Sublease and that certain payments were made directly to him. However, these assertions were made in support of his tort claims; he made no argument below that the contract had been modified.

non-contractual legal duty to reclaim the site stems from the DEQ permit issued to Baston's father, Mike Baston, and Mike Baston's company, Farwest, LTD. Mike Baston and Farwest, LTD were not served. Deschamps has not established a non-contractual duty owed to him by Baston and Farwest Products.

¶23   Deschamps also argues that Farwest Products incurred a duty when it commenced, but did not finish, reclamation efforts. Deschamps points to the Restatement (Second) of Torts § 323 (Am. Law Inst. 1965), which imposes a duty of reasonable care upon one who affirmatively undertakes to render service to another. However, the Restatement only imposes liability for "physical harm resulting from [a] failure to exercise reasonable care to perform [the] undertaking, if (a) [the] failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second) of Torts § 323. Deschamps does not demonstrate that Farwest Products failed to exercise reasonable care during reclamation efforts or, in so doing, induced detrimental reliance by Deschamps or caused physical harm. He simply contends that the task was not completed, a contractual claim that he lacks the standing to bring for the reasons discussed above.

**CONCLUSION**

¶24   The District Court was correct in finding that the Bar 11 entity named as a party to this suit was not the same as the original Bar 11 that entered into the disputed agreement with Farwest Products. The lower court did not err in determining that the original Bar 11 could not commence litigation against Farwest over six years after it was administratively dissolved or that Deschamps—who was not a party to the disputed Sublease agreement—

11

was not an intended third-party beneficiary, was owed no duty of care independent of the contract, and therefore lacked standing to sue. In finding that there was no now-existing plaintiff with standing to sue in this controversy, the District Court properly concluded that there was no dispute of material fact and that Farwest Products was entitled to a judgment as a matter of law and properly granted summary judgment.

¶25    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE